**Vivian FREY, Plaintiff,**

v.

**DEPARTMENT OF HEALTH AND HUMAN SERVICES, et al., Defendants.**

**No. CV–83–4215.**

United States District Court, E.D. New York.

April 12, 1985.

Katherine Levitan, Mineola, N.Y., for plaintiff.

Raymond J. Dearie, U.S. Atty., E.D.N.Y. by William B. Peterson, Asst. U.S. Atty., Brooklyn, N.Y., for defendants.

DISCOVERY ORDER

JOHN L. CADEN, United States Magistrate.

Defendant, Social Security Administration ("SSA"), requests this court to enter a protective order pursuant to F.R.Civ.P. 26(c) to prevent plaintiff's counsel from contacting and conducting interviews with any potential witnesses who are SSA employees unless such action is taken through formal discovery procedures.

The underlying law suit is a sex discrimination claim brought by plaintiff, Vivian Frey, against the SSA pursuant to Title 42 U.S.C. § 2000e. Plaintiff is a GS–14 employee presently employed as the Assistant

Director of Management at SSA's Northeastern Program Service Center ("NEPSC") in Rego Park, New York and contends that she was denied a promotion to the GS–15 position of Director of Management in 1981 because of her sex. A male GS–14 employee was selected for this position instead of plaintiff.

The controversy which is the subject of this discovery dispute arose when plaintiff contacted Harlan Barbe, a GS–13 employee employed as Administrative Assistant to the Director of the Office of Program Service Center at the SSA's Baltimore office. The contact took place during the course of an ordinary business discussion and the substance of it was that Mrs. Frey asked Mr. Barbe to speak with her attorney about her case. (Letter from William B. Peterson to Magistrate Caden dated March 19, 1985).

On February 4, 1985, defendant's counsel, William B. Peterson, an Assistant United States Attorney, wrote a letter to plaintiff's counsel, Katherine Levitan, requesting that plaintiff refrain from "any further such contacts" because the Code of Professional Responsibility DR 7–104(A) mandates that all contacts with SSA employees about this case should be confined to formal discovery procedures. Mrs. Levitan responded on February 8, 1985 by refusing to cease this activity and rejecting this interpretation of the disciplinary rule. Defendant's counsel then moved for a protective order prohibiting the aforementioned activity.

The parties have each submitted their positions on the issue. Plaintiff, Mrs. Frey, has agreed not to have any ex parte communication with the high level managerial employees responsible for the employment decision at issue, but asserts that she has the right to informal ex parte contact with all other current and former SSA employees who could provide relevant evidence in this case. (Plaintiff's Memorandum of Law at 1, undated, "Plaintiff's Brief"). Defendant's counsel argues that the SSA is represented by counsel and that all of its current employees are parties within the meaning of CPR DR 7–104(A)(1),

so that plaintiff and her counsel should not be able to contact any SSA employees on an ex parte basis. In the alternative, defendant's counsel argues that if contacts with SSA employees are allowed ex parte, those contacts should not extend to SSA employees at GS–12 and above employed in the Office of the Commissioner, and all Offices of Program Service Centers. (Defendant's Letter Brief at 5, March 15, 1985 "Defendant's Brief"). Defendant further requests that plaintiff and her counsel be ordered to inform all SSA employees whom they contact: The reason for the interview; the fact that the employee can speak to defendant's counsel and have that counsel present at the interview; and that 5 U.S.C. § 552a, the Privacy Act of 1974 prohibits disclosure of SSA records. *Id.*

## DISCUSSION

CPR DR 7–104(A) ("Rule") provides as follows:

During the course of his representation of a client a lawyer shall not:

(1) Communicate or cause another to communicate on the subject of the representation with a *party* he knows to be represented by a lawyer in that matter unless he has the prior consent of the lawyer representing such other party or is authorized by law to do so. (Emphasis added).

The historical purposes of the Rule have been characterized as "preserving the proper functioning of the legal system and shielding the adverse party from improper approaches." *Wright By Wright v. Group Health Hosp.*, 103 Wash.2d 192, 691 P.2d 564, 467 (1984), *citing* ABA Comm. on Professional Ethics and Grievances, Formal Op. 108 (1934). While others have characterized the original intent of the Rule somewhat differently, in recent years, both courts and commentators have emphasized that the Rule is meant "to prevent situations in which a represented party may be taken advantage of by adverse counsel; the presence of the party's attorney theoretically neutralizes the contact." *Wright*, 691 P.2d at 567; *see* Kurlantzik, *The Prohi-*

*bition on Communication with an Adverse Party,* 51 Conn.B.J. 136, 145–46 (1977). *See also,* Leubsdorf, *Communication with Another Lawyer's Client: The Lawyer's Veto and the Client's Interest,* 127 U.Pa.L.Rev. 683 (1979) ("Leubsdorf").

While the identity of who is a party is easily discernable in litigation between private parties, the scope of the Rule protecting approaches by adverse counsel is unclear when one party is a government agency.

A review of the case law shows a dearth of authority on this specific issue. However, in an analogous context, in *Vega v. Bloomsburgh,* 427 F.Supp. 593, 595 (D.Mass.1977), where plaintiffs sued certain state officials who administered the state medicaid program, the court held that employees of the defendant state officials were not parties to the action within the meaning of DR 7–104. The court reasoned that no showing was made that the individual employees were represented by the Attorney General or that their interests were adverse to plaintiffs' or consistent with defendants'. *Id.* at 595.

In *N.Y.S. Ass'n. for Retarded Children v. Carey,* 706 F.2d 956, 960 n. 5 (2d Cir. 1983), one of a series of cases involving mentally retarded persons and defendants, state officials, the Second Circuit approved *Vega* to the extent that it upheld a similar denial of an order seeking to prevent plaintiffs' counsel from questioning employees of the Willowbrook State School for the Mentally Retarded, a state institution. The court acknowledged that in such cases the burdens and danger of informal interrogation of employees should be balanced against the degree to which the proposed questioning will aid in the search for truth. 706 F.2d at 961. *Cf. Belcher v. Bassett Furniture Indus., Inc.,* 588 F.2d 904 (4th Cir.1978).

The most thorough discussion of the problem identifying the scope of DR 7–104 is found in *Wright, supra* where plaintiff in a malpractice action sought the right to interview ex parte current and former employees of defendant health maintenance organization, a private corporation. The court held that defendant's current employees were parties for the purposes of the Rule if under applicable state law, they had managing authority sufficient to give them the right to speak for, and bind, the corporation. 691 P.2d at 569. This "managing-speaking" agency test was found to be consistent with (1) the American Bar Association's most recent approach on the subject, *see* Lawyers' Manual on Professional Conduct (ABA/BNA 71:314) (1984); (2) the purpose of the Rule, *see* Leubsdorf *supra;* and (3) the policy of keeping the testimony of employee witnesses freely accessible to both parties. 691 P.2d at 569.

In grappling with the issue of who is a party within the meaning of DR 7–104 when there is a multi-party entity and that entity is a government agency, the court notes that for purposes of this dispute plaintiff has, in effect, conceded that certain persons should be treated as party-defendants. Plaintiff's position is that the Rule applies to those employees of a government agency who are the "alter egos" of the entity, that is, those individuals who can bind it to a decision or settle controversies on its behalf. Parenthetically, the court notes that none of the individuals who participated in the failure to promote plaintiff can be joined as parties in this action because plaintiff's Title VII suit can only name the government agency as the party-defendant. In this case, plaintiff proposes that the term "party" extends to those high level SSA employees who participated in the decision not to promote plaintiff to the GS–15 position. (Plaintiff's Brief at 5, 11). The court agrees that the term "party" in this case should be read to encompass those employees who are the agency's alter ego as that term has been defined above and that at least the high level managerial employees who participated in the decision not to promote plaintiff fall within that category.

Apparently, plaintiff's counsel has also agreed that the following SSA employees will not be contacted ex parte: "[T]he selectee himself and the Commissioners of

SSA, Deputy Commissioners, Associate Commissioners, Regional Commissioners and Directors of the Program Service Centers." (Defendant's Brief at 5). Therefore, the court will only address itself to the question of whether any other SSA employees should be considered "parties" in the context of DR 7-104 and excluded from ex parte contacts.

■ In determining this specific issue the court adopts the balancing approach approved by the Second Circuit in *Carey, supra,* since it is viewed by this court as best accomodating the competing interests between the plaintiff's need for information which is in the possession of the SSA and the protection of the party-defendant from adverse counsel obtaining uncounselled disclosures from SSA employees.

■ The court finds after careful review of the authorities mentioned and relevant considerations of policy that, on balance, the proposed questioning sought by plaintiff which will aid in the search for truth is paramount and outweighs any burden or danger to the defendant. Therefore, the informal contact sought by plaintiff of all other SSA employees including those within the GS 12-15 levels of employment will be permitted.[1]

In enacting the statutory scheme of Title VII which embodies the strong national policy against employment discrimination, Congress could not have intended to disadvantage plaintiffs in preparation of their cases. The SSA is a vast machinery encompassing many organizational departments and thousands of employees. In this case it is essential to plaintiff's ability to fully prepare and present her case that SSA employees who are potential witnesses

be informally contacted so that she may ascertain whether their testimony may be helpful in her case.

Where, as here, the party-defendant is a multi-party entity, DR 7-104's protection of such party from adverse counsel is in direct conflict with the goal of broad access to witnesses to uncover and present all relevant evidence to the fact finder. Extension of the term "party," as defendant would interpret the Rule, to include all SSA employees would bar plaintiff's access to a vast number of potential witnesses who might have direct knowledge of agency practice or facts relevant to plaintiff's case. Further, to permit the SSA to barricade huge numbers of potential witnesses from interviews except through costly discovery procedures, may well frustrate the right of an individual plaintiff with limited resources to a fair trial and deter other litigants from pursuing their legal remedies. Leubsdorf, *supra. Cf. IBM Corp. v. Edelstein,* 526 F.2d 37 (2d Cir.1975) (court order forbidding defendant's counsel to interview plaintiff's witnesses when plaintiff's counsel is absent and interview is not transcribed impairs defendant's right to effective use of counsel); *Gregory v. United States,* 369 F.2d 185 (D.C.Cir.1966) (prosecutor's advice that in his absence witnesses not speak to defendant's lawyer denies defendant a fair trial); *Vega v. Bloomsburgh, supra* (first amendment forbids state agency to order employees not to speak with plaintiff's attorney without approval of agency's attorney); *Rodriguez v. Percell,* 391 F.Supp. 38 (S.D.N.Y.1975) (similar); *United States v. City of Milwaukee,* 390 F.Supp. 1126 (E.D.Wis.1975) (Title VII forbids disciplining employees for talking with

---

**1.** The court notes that defendant SSA is unable to produce any records as to applicants for promotion to the position of Director of Management in Program Service Centers, grade GS-15, for the years 1975 to the present. This is due to the fact that information regarding promotion vacancies is only kept for two years and records concerning applicants for vacancies posted prior to January 1983 are not available. Defendant's Response to Plaintiff's Third Set of Interrogatories, Interrogatory No. 2; *see* Plaintiff's Reply Brief at 4, March 25, 1985.

Since plaintiff's underlying claim in this case is failure to be promoted to a GS-15 level because of sex discrimination and her offer of proof will be that there are other women similarly situated, it is clear that SSA employees within the GS 12-15 categories are important potential witnesses. Informal discussions with such employees are deemed necessary where, as here, plaintiff has first sought information through formal discovery and it is not available.

Justice Department attorney regarding civil rights suit).

■ The court finds persuasive the *Wright* decision, *supra* where the Washington Supreme Court recognized the policy conflict that arises when a multi-party entity sought to use DR 7–104(A)(1) defensively so as to prevent an adverse attorney from interviewing employees ex parte. In weighing the "need of the adverse attorney for information which may be in the exclusive possession of the corporation and may be too expensive or impractical to collect through formal discovery" against the corporation's need to protect itself, the court resolved the conflict by allowing plaintiff ex parte access to those who did not have "authority to bind the corporation." [2] There is even stronger reason to construe the term "party" in DR 7–104 narrowly in this case where the defendant is a government employer. Indeed, while for most litigation purposes the law treats a government entity just like any other party, *see Hearn v. Rhay*, 68 F.R.D. 574 (E.D.Wash. 1975) (government has right to assert attorney-client privilege); *United States v. Procter & Gamble Co.*, 356 U.S. 677, 78 S.Ct. 983, 2 L.Ed.2d 1077 (1958) (government is subject to same rules of discovery as other parties), unlike a corporate party, the government also has a duty to advance the public's interest in achieving justice, an ultimate obligation that outweighs its narrower interest in prevailing in a law suit. *See* Note, DR 7–104 of the Code of Professional Responsibility Applied to the Government "Party," 61 *Minnesota Law Review*, 1007, 1920 (1977).

■ Defendant's objection that any statements gathered may be admissions under Fed.R.Evid. 801(d)(2)(D) must fall given this court's conclusion that the SSA

---

2. In attempting to balance the conflicting policies, the analysis by bar associations and commentators has focused on the corporation as a multi-party entity and whether a corporate party's employee should be considered a "party." By analogy to the government as a multi-party entity and its employees such analysis is relevant here and may be classified as follows:

(1) some authorities hold that DR 7–104(A)(1) does not bar ex parte interviews with any employees who were witnesses to the acts or omissions giving rise to the action. ABA Comm. on Professional Ethics and Grievances, Formal Op. 117 (1934); Los Angeles Cy. Bar Ass'n., Op. 234 (1956), *digested in* O. Maru, Digest of Bar Association Ethics Opinions 66 (1970) (hereinafter 1970 Digest); Michigan State Bar Ass'n., Op. 141 (1951), *reprinted in* 38 Mich.St.B.J. 181 (1959); New York City Bar Ass'n., Op. 331 (1935), *digested in* 1970 Digest, at 279;

(2) other authorities conditionally permit adverse counsel to have ex parte interviews with employees so long as the employees do not have power to bind the corporation because of their authority as corporate officers or employees. Lawyers' Manual on Professional Conduct (ABA/BNA) 71:314 (1984), *quoting* ABA Comm. on Professional Ethics and Grievances, Informal Op. 1410 (1978). *Accord,* Comment, Model Rules of Professional Conduct, Rule 4.2 (1983); Los Angeles Cy. Bar Ass'n., Op. 369 (1977), *digested in* O. Maru, 1980 Supp. to the Digest of Bar Ass'n. Ethics Opinions 75–76 (1982); Arizona State Bar Ass'n., Op. 203 (1966), *digested in* O. Maru, 1970 Supp. to the Digest of Bar Ass'n Ethics Opinions 127 (1972) (hereinafter 1970

Supplement); Idaho State Bar Ass'n., Op. 21 (1960), *digested in* 1970 Digest at 105; H. Drinker, *Legal Ethics* 201 (1953);

(3) other authorities define "party" based on the employee's relationship to the matter about which information is sought, that is, whether the employer is merely a witness or whether the act or omission of the employee is imputed to the employer for purposes of civil liability. *See, e.g.* Texas State Bar Ass'n., Op. 343 (1968), *digested in* 1970 Supplement, at 297; Louisiana State Bar Ass'n., Op. 326 (1968), *digested in* 1970 Supplement, at 225; Comment, Model Rules of Professional Conduct, Rule 4.2 (1983); and

(4) finally, one authority appears to completely prohibit ex parte interviews with employees. New York Cy. Year Book, Op. 528 (1965), *digested in* 1970 Digest, at 241–42. *Cf.* New York State Bar Ass'n., Ethics Comm., Opinion No. 160 (1970) (government entity treated same as corporation). *But see,* New York State Bar Ass'n., Opinions, No. 404 (1975) where the New York State Committee on Professional Ethics stated that an attorney could communicate with individual minority members of a board of education about a contested board decision. One commentator has contended that this New York State Bar opinion is based on the rationale that the public has the right to direct communication with their representatives and indeed, to unrestricted contact with any government entity. Therefore, it is suggested that New York may have implicitly made DR 7–104(A)(1) totally inapplicable to the government. Note, DR 7–104 of the Code of Professional Responsibility Applied to the Government "Party" 61 *Minnesota Law Review* 1007, 1026 (1977).

employees sought to be interviewed by plaintiff are not "parties" under DR 7–104. Plaintiff's counsel who argues that the employees' statements may be admissions usable in court against the SSA (Plaintiff's Reply Brief at 1, March 25, 1985), cannot have it both ways since the employees will not be deemed by this court to be non-parties for purposes of DR 7–104 but "parties" for purposes of Fed.R.Evid. 801(d)(2)(D). Suffice it to say that the SSA employees who may be reached by ex parte contact are not considered agents of the SSA with authority to "bind" the agency under DR 7–104 or capable of making admissions on behalf of the SSA under the Federal Rules of Evidence.

It is also worth noting that the SSA has the benefit of F.R.Civ.P. 30(b)(6) which provides the method for taking the deposition of a government entity and includes within the parameters of the rule those regarded as speaking for the entity. Therefore, the only persons who could make admissions on behalf of the SSA are those persons already identified herein as capable of speaking for the agency and they have been excluded from ex parte contact. While defendant SSA may later come forward with other employees who it deems capable of speaking for it under Rule 30(b)(6), the SSA is adequately protected by this Rule from having any of its representatives make uncounselled admissions usable against the agency at trial.

Further, defendant can have little cause to be "surprised" at trial by any information obtained from its employees by plaintiff since defendant, of course, has the right to depose its employees who were interviewed.

■ Another contention by defendant that Privacy Act considerations under 5 U.S.C. § 552a are implicated here is without merit since plaintiff's counsel is not seeking the disclosure or production of SSA records. To the extent that informal discussions may refer to the content of any SSA records, plaintiff and her counsel shall, in conformity with this order, inform SSA employees whom they contact that the Privacy Act prohibits disclosure of SSA records.

■ Next, defendant also contends that in the course of preparing discovery responses, some employees at the GS–12 level and above at the Northeastern Program Service Center where plaintiff is employed, and other SSA employees around the country have made "communications" to counsel that are protected by the attorney-client privilege, and these employees should be insulated from interviews. This argument goes too far. While in *Upjohn v. United States*, 449 U.S. 383, 101 S.Ct. 677, 66 L.Ed.2d 584 (1981) the court held that even low level employees may make confidential communications to a corporation's attorney which are covered by the privilege, the Court emphasized that "the attorney-client privilege only protects disclosure of communications, it does not protect disclosure of the underlying facts, by those who communicated with the attorney." 449 U.S. at 395, 101 S.Ct. at 685. Therefore, plaintiff's counsel may question these employees as to any relevant fact within their knowledge. In this vein, plaintiff's counsel has agreed not to question employees about communications they made to defendant's counsel in this case. (Plaintiff's Brief at 6).

Thus, the court rejects a blanket rule approach which would prohibit plaintiff's contact of all GS 12–15 employees since some of them might have information helpful to plaintiff's case.

Finally, the government's interest in preventing uncounselled concessions of interest by its employees is adequately met in this case since plaintiff's counsel agrees to advise all SSA employees that she is plaintiff's attorney and that they may get their own attorney or have defendant's counsel present during the interview, and that they may refuse to speak with her about the instant suit.

Plaintiff's proposal that defendant's counsel be required to issue a memorandum to all employees who may be contacted by plaintiff or her counsel advising them they may talk free of reprisal is rejected.

**39**

In this case, defendant's counsel has never instructed SSA employees not to talk to plaintiff or her counsel about the case and a written memorandum to SSA personnel is not deemed appropriate here, where there has been no contrary instruction by the employer.

Accordingly, it is hereby

ORDERED that the government's motion for a protective order is denied. It is further

ORDERED that plaintiff or plaintiff's counsel advise SSA employees whom they contact that they have a right to their own counsel or to have defendant's counsel present during the interview, that they may refuse to speak with them about the suit, and that the Privacy Act prohibits disclosure or production of SSA records.

SO ORDERED.