[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION ON DEFENDANTS' MOTION FOR PROTECTIVE ORDERDATED SEPTEMBER 13, 1996
Pursuant to a September 13, 1996, motion, defendants in this case have moved for a protective order in two respects.
First, defendants seek an order "prohibiting plaintiffs' counsel from having any contact with any attorney employed by the Division of Public Defender Services concerning the subject matter of this case without first obtaining the consent of counsel for the defendants." Defendants claim that contacts without such prior consent are prohibited by Rule 4.2 of the Rules of Professional Conduct.[1]
Second, defendants move that a protective order issue "protecting from disclosure information concerning a putative class member's own case or cases in which the attorney-client privilege may be applicable, or which involves medical, psychiatric or similar information, unless the putative class member provides a written waiver for this information." Defendants contend that provision of such a waiver is necessary "in order for the attorneys in the public defender system to meet their professional obligation to maintain the attorney-client privilege, and in some cases by statute for the medical or similar information."[2]
Plaintiffs oppose the motion. The issue has been fully briefed and was the subject of substantial oral argument on CT Page 6882 December 6, 1996.
Because of the important nature of the issues raised, the dearth of Connecticut law on the subject, and the significant impact that the management of discovery will have on this case, an extended discussion of the legal issues raised by defendants' motion is appropriate. For the reasons stated below, defendants' motion is granted in part and denied in part, as indicated in this memorandum and the First Protective Order which is being issued as part of this opinion. A hearing will be held to deal with the issue of whether to permit unconsented-to contacts with the 12 public defenders in charge of each of the 12 J.D. offices or JD/GA combined offices, and the 21 supervisory assistant public defenders in charge of the GA, juvenile and habeas corpus offices throughout the state.
Legal Discussion
A. Contacts Between Plaintiffs' Counsel and Attorneys and Other Persons Employed by the Division of Public Defender Services.
The defendants want plaintiffs' counsel to be completely prohibited from having any contact with any attorneys and other persons employed by the Division of Public Defender Services unless they first obtain the consent of counsel for the defendants. Defendants express concern that such contacts have taken place and argue that they are barred by Rule 4.2 of the Rules of Professional Conduct. For the reasons stated, the Court believes that defendants seek an unduly wide application of the rule and have failed to establish good cause for the issuance of the broad protective order requested given the facts and circumstances presented by this case. Practice Book Section 221;Higgins v. Old Line Life Insurance Company, 6 Conn. L. Rptr. 3
(1992); Carrier Corp. v. Home Insurance Co., 6 Conn. L. Rptr. 478, 479 (1992); Mompoint v. Lotus Development Corp.,110 F.R.D. 414, 419 (D. Mass. 1986).
Rule 4.2 of the Rules of Professional Conduct states:
 In representing a client, a lawyer shall not communicate about the subject of the representation with a party the lawyer knows to be represented by another lawyer in the matter, unless the lawyer has the consent of the other lawyer or is CT Page 6883 authorized by law to do so.[3] (Emphasis added.)
The comment to the rule states as follows:
 In the case of an organization, this Rule prohibits communications by a lawyer for one party concerning the matter in representation with persons having a managerial responsibility on behalf of the organization, and with any other person whose act or omission in connection with that matter may be imputed to the organization for purposes of civil or criminal liability or whose statement may constitute an admission on the part of the organization.
As our Supreme Court has stated, "The purpose of this restriction is to preserve the integrity of the lawyer-client relationship by protecting the represented party from the superior knowledge and skill of the opposing lawyer. The rule is designed to prevent situations in which a represented party may be taken advantage of by opposing counsel." Pinsky v. StatewideGrievance Committee, 216 Conn. 228, 236 (1990).
Not surprisingly, the defendants, wishing to limit the scope of unrestricted access to attorneys and others employed by the Division of Public Defender Services, argue for an extremely broad interpretation of who constitutes a "party" for purposes of this case. It is equally unsurprising that plaintiffs, seeking the widest scope of unrestricted access to such attorneys and others, argue for a narrow view of who should be considered a "party" under the rule. On balance, given the particular issues presented by this case and the purpose of the rule, I conclude that the plaintiffs have the better argument.
As a preliminary matter, it should be noted that while the Public Defender Services Commission and its members are named in their official capacities as defendants in the complaint, individual public defenders and assistant public defenders are not named defendants and therefore lack party status.[4]
Strictly speaking, therefore, plaintiffs are technically correct when they argue that Rule 4.2's prohibition on communication with "parties" is not applicable. However, a literal reading of the CT Page 6884 rule does not resolve the instant dispute because, as the above-referenced comment, the case law and the commentators make clear, special concerns arise when litigation involves multi-person entities such as corporations or governmental entities.[5] See,e.g., Judge Silbert's ruling in Service v. Meriden,___ Ct. CaseBase ___, ___ CSCR ___, ___ Conn. L. Rptr. ___, CV 940241732 (November 9, 1995) (enjoining attorney from "any contact of any kind with any City of Meriden managerial employees as well as any other employees who are in a position to make admissions or any other way to bind the City, without express prior written consent" in a slip and fall case alleging negligence against the city).
Aside from Service v. Meriden, the parties have brought to the Court's attention no Connecticut cases directly on point.Service v. Meriden is distinguishable on its facts, involving private litigation against the city, not a variety of constitutional claims implicating the criminal justice system. The parties have, however, cited numerous relevant cases from other jurisdictions. See, e.g., Frey v. Department of Health andHuman Services, 106 F.R.D. 32 (E.D.N.Y. 1985); Mompoint v. LotusDevelopment Corp., 110 F.R.D. 414 (D. Mass. 1986); Morrison v.Brandeis University, 125 F.R.D. 14 (D. Mass. 1989); Vega v.Bloomsburgh, 427 F. Sup. 593 (D. Mass. 1977). Defendants argue in their November 1, 1996, reply memorandum that the courts have adopted three different approaches in analyzing the issues raised by their motion: (1) the "interest at stake" approach; (2) the "case by case balancing" approach; and (3) the "control group" or "managing speaking" approach. As the case law makes clear, all of the approaches have various strengths and various weaknesses, and are worthy of brief discussion.
Defendants argue that the "interest at stake" approach — a label they have devised — was used by the New York Court of Appeals in Niesig v. Team I, 558 N.E.2d 1030
(1990). This case concerned a construction site accident and resulting lawsuit between private parties. Plaintiff moved for permission to have his counsel conduct ex parte interviews with other employees of his employer who had witnessed the accident. The court reviewed various approaches that had been adopted and the need to accommodate the corporate defendant's legitimate interests with the need to permit plaintiff to discover facts relevant to his claim. "Foreclosing all direct, informal interviews of employees of the corporate party unnecessarily sacrifices the long-recognized value of such sessions . . . CT Page 6885 Costly formal depositions that may deter litigants with limited resources, or even somewhat less formal and costly interviews attended by adversary counsel, are no substitute for such off-the-record private efforts to learn and assemble, rather than perpetuate, information." Id. at 1034. Concluded the court:
 The test that best balances the competing interests, and incorporates the most desirable elements of the other approaches, is one that defines "party" to include corporate employees whose acts or omissions in the matter under inquiry are binding on the corporation (in effect, the corporation's "alter egos") or imputed to the corporation for purposes of its liability, or employees implementing the advice of counsel. All other employees may be interviewed informally.
Id. at 1035.
Defendants argue that the Court should adopt the approach used by the Court in Niesig and thereby prohibit contacts not only with those exercising managerial functions but also with all attorneys employed by the Public Defender Services Commission — including all assistant public defenders.[6]
The second approach that has been used, according to defendants, is the "case by case balancing" approach found in cases such as Frey v. Department of Health and Human Services,106 F.R.D. 32 (E.D.N.Y. 1985). In Frey plaintiff brought a sex discrimination case against the Social Security Administration. The agency moved for a protective order to prevent plaintiff's counsel from contacting Social Security Administration employees outside formal discovery procedures. United States Magistrate John L. Caden stated as follows in ruling:
 The court finds after careful review of the authorities mentioned and relevant considerations of policy that, on balance, the proposed questioning sought by plaintiff which will aid in the search for truth is paramount and outweighs any burden or danger to the defendant . . . Extension of the term `party,' as defendant would interpret the Rule, to include all SSA employees would bar plaintiff's access to a vast number of potential witnesses who might have direct knowledge of agency practices or CT Page 6886 facts relevant to plaintiff's case. Further, to permit the SSA to barricade huge numbers of potential witnesses from interviews except through costly discovery procedures may well frustrate the right of an individual plaintiff with limited resources to a fair trial and deter other litigants from pursuing their legal remedies . . . [w]hile for most litigation purposes the law treats a government entity just like any other party . . . unlike a corporate party, the government also has a duty to advance the public's interest in achieving justice, an ultimate obligation that outweighs its narrower interest in prevailing in a law suit.
(Citations omitted.) (Emphasis added.)
106 F.R.D. at 36-37.
The third conceptual approach identified by defendants is what they call the "control group" or the "managing-speaking" test, exemplified by Wright v. Group Health Hospital, 691 P.2d 564
(1984), in which the Supreme Court of Washington evaluated a request by plaintiffs bringing a malpractice action to interviewex parte current and former employees of a defendant health maintenance organization. After a detailed discussion of the issues involved and approaches taken in other cases, the Court stated:
 We hold the best interpretation of `party' in litigation involving corporations is only those employees who have the legal authority to `bind' the corporation in a legal evidentiary sense, i.e., those employees who have `speaking authority' for the corporation. This interpretation is consistent with the declared purpose of the rule to protect represented parties from the dangers of dealing with adverse counsel . . . A flexible interpretation of `parties,' moreover, advances the policy of keeping the testimony of employee witnesses freely accessible to both parties. (Citations omitted.)
Id. at 569.
I agree with defendants' argument that the Niesig approach, which involved a personal injury claim implicating a corporate entity, may be appropriate, depending upon the facts and CT Page 6887 circumstances, in certain cases involving multi-person entities. However, I disagree with the restrictive manner in which defendants suggest the Niesig approach should be applied in the instant case. Special concerns exist in a case such as this in which governmental entities and officials are the named defendants, in which fundamental allegations about the fairness of the criminal justice system are being made, and in which claims of a constitutional magnitude are being asserted. In a case such as this, the Niesig approach as construed by defendants would serve to unduly limit the free and unfettered flow of information during the discovery stage.
Stated otherwise, acceptance of the broad definition of the term "party" urged by defendants would unduly restrict the search for truth in this case, which must remain paramount. See, e.g.,Lora v. Board of Education of City of New York, 74 F.R.D. 565
(E.D.N.Y. 1977) (only strong countervailing public policies should be permitted to prevent disclosure when suit is brought to redress a claim for violation of civil rights). See also Frey v.Department of Health and Human Services, supra, at 36.
I agree with the view of the Supreme Court of Washington inWright by Wright v. Group Health Hosp., 691 P.2d 564, 569 (1984) that it is "not the purpose of the rule to protect a corporate party from the revelation of prejudicial facts . . . Rather, the rule's function is to preclude the interviewing of those corporate employee who have the authority to bind the corporation."
No matter what analytical approach is used or what name is given to it, the goal must be the same. The approach must be fair, flexible, workable, tailored to the facts and circumstances of the particular case, and calculated to acknowledge and balance the legitimate interests of the parties. In this case, the legitimate interests of the plaintiffs are apparent: to engage in as much unfettered pretrial discovery as they can to gather information in advance of trial. The interests of the defendants, however, are more variegated and complex. On the one hand, defendants unquestionably have a legitimate right, within the context of the usual ethical constraints of the adversary system and as named defendants in a lawsuit, to attempt to limit unconsented-to contacts. They also have a legitimate right to insist that any discovery process established not unduly interfere with the smooth working of their respective offices and, more significantly, of the public defender system itself. On CT Page 6888 the other hand, as the cases have acknowledged, see Frey, supra, the defendants are not simply private corporate defendants involved in a private lawsuit and ought not to be treated as such. They are public persons and entities carrying on the public's business. As such, they are compelled to strike a delicate balance and play a difficult dual role — vigorously defending the case, yet ensuring all the while that justice is done.
There is nothing in the record from which the Court can conclude that any individual assistant public defender has the authority to bind the Public Defender Services Commission or to settle this case or any other civil case for the commission or acts in a managerial capacity. I conclude that given the facts of this case, notwithstanding the fact that they are employed by the commission, for purposes of the pending motion, assistant public defenders and other nonmanagerial employees ought to be considered "fact witnesses" and not "parties" and that plaintiffs' counsel should have free, unrestricted access subject to the First Protective Order being issued today, without the need to obtain defendants' consent prior to initiating any contact.[7] To limit access to them, or impose any conditions that would expose them to concerns that they might face penalties or reprisals — however unwarranted such fears might be — would be to choke off the flow of information from sources well-positioned, perhaps uniquely positioned, to provide important information and evidence in this case. To provide that they may speak to plaintiffs' counsel, but only in the presence of defendants' lawyers, would unquestionably diminish the willingness of those who have freely consented to be interviewed to talk freely and frankly without fear of adverse consequences.See, e.g. Note: DR 7-104 of the Code of Professional Responsibility Applied to the Government "Party," 62 Minn. L. Rev. 1007, 1015 (1977) ("The presence of the entity's attorney might tend to stifle the employees' willingness to disclose information. Although government or corporate employees may have less commitment to the entity's practices and policies than their superiors and may often be more willing to speak candidly about their internal operations, the presence of the entity's attorney during questioning could discourage an employee from such disclosures for fear that if his statements were reported to his superior, it would jeopardize his job or the possibility of advancement.")
However, it must be made clear: whether individual assistant CT Page 6889 public defenders — and other nonmanagerial employees of the Public Defender Services Commission — choose to talk with plaintiffs' counsel is and must be a matter of personal choice made with full awareness of the uses which may be made of the information they supply. They must neither feel compelled to cooperate with plaintiffs' counsel, nor fear any adverse consequences whatever if they do, nor misunderstand why they are being contacted or by whom.
Consequently, given the sensitive choices they may be forced to make, a decent respect for the legitimate concerns and prerogatives of the more than 110 individual assistant public defenders, and other nonmanagerial employees, requires the Court to enter protective orders. These orders are modelled in part on orders issued by United States Magistrate Judge Robert B. Collings in Morrison v. Brandeis University, 125 F.R.D. 14, 19-20 (D. Mass. 1989), and United States Magistrate Judge Joan Margolis in Bartkus v. Meachum, Civil No. H-80-506 (Nov. 4, 1991). The purpose of these orders is to ensure that if individual assistant public defenders and other nonmanagerial employees choose to discuss their views with plaintiffs' counsel, they do so with full understanding of to whom they are speaking; with full understanding of their right to refuse to speak or insist on the presence of counsel; and with full understanding that what they say could be used in the discovery and trial phases of this case and could be made public. They must also be assured that if they do choose to speak with plaintiffs' counsel, they will not face any adverse consequences whatever for doing so. They must be assured that their individual choice will be respected by all concerned.
Pursuant to the agreement stated in open court on December 6, 1996, plaintiffs have represented that they will not seek to make unconsented-to contact with the following persons: the chief public defender; the deputy chief public defender; the personnel administrator; the chief of legal services; the chief of capital defense and trial services; the assistant public defender in charge of training; the legal counsel; the financial officer; the chief social worker; and the chief investigator.
A significant issue remains as to the status of the 12 public defenders in charge of each of the 12 J.D. offices or combined JD/GA combined offices and the 21 supervisory assistant public defenders in charge of GA, juvenile and habeas corpus offices throughout the state. Counsel for defendants made certain CT Page 6890 representations concerning their managerial and job responsibilities in court on December 6, 1996. Having considered this matter further, I conclude that, on the present record, I do not possess sufficient information to determine whether to permit unconsented-to contacts with these 23 persons. Therefore, a hearing is required at which evidence will be presented. As to these 23 persons, the Court reserves decision until such time as the hearing can be held. The parties are ordered to discuss this matter further in an attempt to reach agreement if possible. If no agreement is reached, by no later than January 17, 1996, either party may, in writing, request a hearing.
In consideration of the above, defendants' motion is granted in part and denied in part, consistent with the First Protective Order being issued this date.
Douglas S. Lavine Judge, Superior Court