**Louis Jean MOMPOINT,**

v.

**LOTUS DEVELOPMENT CORPORATION, Brad Chatwynd, Palmer True, Janet Axelrod.**

**Civ. A. No. 85–1664–N.**

United States District Court, D. Massachusetts.

June 16, 1986.

Miniard Culpepper, Jose A. Espinosa, Boston, Mass., for plaintiff.

Scott C. Moriearty, Bingham, Dana & Gould, Boston, Mass., for defendants.

FINAL ORDER ON DEFENDANTS' MOTION FOR ENTRY OF PROTECTIVE ORDER, ETC. (# 20)

ROBERT B. COLLINGS, United States Magistrate.

The defendant Lotus Development Corporation (hereinafter, Lotus) seeks a protective order which contains the following clause:

Neither the plaintiff nor his attorneys of record shall interview any Lotus employees regarding any matter pertinent to this litigation other than pursuant to Rule 30 or as otherwise agreed by the parties.

The plaintiff opposes the entry of such an order.

A brief review of the issues in the case is in order. The plaintiff's Complaint alleges that he was employed by Lotus from February, 1983 until April 24, 1984 when he was terminated by the defendant "...through the wrongful and concerted actions of the defendant Brad Chatwynd, the defendant Palmer True and the defendant Janet Axelrod." Plaintiff avers that the termination was taken "...deliberately after plaintiff had shown an interest in becoming a manager of his section" and was "...not taken for any legitimate reason or reasons other than that the plaintiff is black and of Haitian descent." The plaintiff alleges that the asserted reasons for the termination, i.e. "...for abusing his vendors, for improperly pressuring female employees for sexual favors and for having inappropriately approved an invoice for $250,000 worth of goods that were never received...", were pretextual.

In order to be entitled to a protective order, a party must demonstrate "good cause". Rule 26(c), F.R.Civ.P. Lotus claims that the purpose of the protective order is to enforce DR 7–104(A)(1) which provides:

(A) During the course of his representation of a client, a lawyer shall not:

(1) Communicate or cause another to communicate on the subject of the representation with a party he knows to be represented by a lawyer in that matter unless he has the prior consent of the lawyer representing such other party or is authorized to do so.

Lotus claims that this rule prohibits plaintiff's counsel from communicating with its present employees as to matters within the scope of their employment. The particular employees who plaintiff's counsel wishes to attempt to interview out of the presence of Lotus' counsel are the female employees who allegedly reported that they were improperly pressured for sexual favors by the defendant.

Lotus' theory is based on the provisions of Rule 801(d)(2)(D) of the Federal Rules of Evidence, which provides as follows:

A statement is not hearsay if—

(2) The statement is offered against a party and is

\*    \*    \*    \*    \*    \*

(D) a statement by his agent or servant concerning a matter within the scope of his agency or employment, made during the existence of the relationship...

Since statements by Lotus' current employees may constitute binding admissions upon the corporation pursuant to this rule, Lotus argues that communications with its employees are, in fact, communications with Lotus as a party which are forbidden by DR 7–104(A)(1) in the absence of consent by its counsel.

This interpretation has been endorsed by several ethics committees of bar associations. The most expansive is Inquiry Reference 80–46 of the Committee on Professional Ethics of the Association of the Bar of the City of New York which concluded that:

We believe that the corporation's right to effective representation can be guarded adequately only by viewing all present employees of a corporation as "parties" for purposes of DR 7–104 where the proposed interview concerns matters within the scope of the employee's employment. Without consent or authorization by law, an attorney should not be permitted to conduct *ex parte* interviews of corporate employees whose conduct or statements with respect to matters within the scope of their employment could affect the corporation's legal rights or obligations.

Opinion No. 80–46.

The Committee on Professional Ethics of the Massachusetts Bar Association in Formal Opinion No. 82–7 followed the conclusion and reasoning of the New York City Committee.

It is to be noted that the interpretation of DR 7–104(A)(1) adopted by the New York City and Massachusetts committees is broader than almost all previous interpretations of the rule. As the Massachusetts committee notes in its opinion:

Interpretations of the reach of DR 7–104(A)(1) when a corporate party is involved, have varied in the relatively few opinions and courts and ethics committees that have considered the matter. All have recognized that a corporation may speak only through its agents and that DR 7–104(A)(1) should be interpreted to forbid a lawyer for another party from communicating with some corporate employees without consent in the situation covered by that Rule. Many have limited the prohibition narrowly to include only employees in the "control group," the senior management with the power to commit the corporation. See *Sobol v. Yeshiva University*, 28 EPD 32,479 (S.D.N.Y.1981); ABA Informal Opinion 1410 [Feb. 14, 1978]; and Los Angeles Bar Opinion 1966–6. A few have expanded the group more widely, see New York County Opinion 528 (1965), but until recently there has been little extensive consideration of the rationale for DR 7–104(A)(1) in the opinions.

Formal Opinion 82–7.

The one exception, as noted, is New York County Opinion 528 which prohibited opposing counsel from communicating with all present employees of a corporate party, concluding:

It is immaterial whether such employees are in ministerial categories or have the capacity to bind the corporate employer. The fact that the corporation and its current employees are represented by counsel is sufficient to protect them from interference or contact by opposing counsel.

The reason given by the New York committee for adopting the broader interpretation in Opinion No. 80–46 is that this interpretation is necessary to insure the corporate party's right to effective representation. The same reason is given in the Massachusetts committee's Formal Opinion No. 82–7. The New York committee notes that:

To provide his client effective assistance of counsel on matters in litigation, the corporate attorney must control to some

extent the information passing from the corporation, through its employees, to its adversary.

\*   \*   \*   \*   \*   \*

...[I]nterviews of corporate employees of an adverse party without the knowledge and consent of the lawyer for the corporate party may also undermine the right to effective representation since the lawyer may be required to supervise the manner in which information is elicited to prevent his client from making statements which, through ambiguous use of language, may not accurately or fairly reflect the client's position.... [I]t is an acknowledged aspect of effective representation that the attorney aid his client both to avoid procedural pitfalls and to present truthful statements in the most favaorable manner.

Opinion No. 80–46.

Thus, the New York committee's position prohibits communication with a corporate party's employees concerning matters within the scope of the employee's employment without notice to the corporate attorney. The test as to whether the matters which are to be the subject of inquiry to the employees are within or outside the scope of their employment. According to the New York committee:

Our interpretation of DR 7–104(A)(1) would permit interviews with all employees concerning their knowledge of factual matters outside the scope of their employment. For an example, if an employee happened to observe an incident over which he had neither responsibility nor authority, such as an accident at the site of his employer, his statements on that subject would relate to matters outside the scope of his employment and adverse counsel could approach him directly without running afoul of DR 7–104(A)(1).

Opinion No. 80–46.

Similarly, the Massachusetts committee wrote:

The rule adopted by this opinion does not preclude a lawyer from interviewing employees of an adversary corporation without its lawyer's consent in all situations. Where employees have information which does not relate to matters within the scope of their employment, that is, where they are not in a position to bind the corporation by their statements, then their situation seems more analogous to that of the ordinary witness and the prohibition of DR 7–104(A)(1) ought not to apply. The familiar example is that of an employee who merely witnesses a traffic accident involving a corporate vehicle.

Formal Opinion 82–7.

In short, these interpretations of DR 7–104(A)(1) are "...co-extensive with the evidentiary rule [Rule 801(d)(2)(D), F.R.Evid.] that an employee may make a statement concerning a matter within the scope of his employment which is thereafter admissible through the testimony of the interviewer as an admission by the corporation." Opinion No. 80–46.

Whether this interpretation of DR 7–104(A)(1) is a correct interpretation, or whether the rule, if correctly interpreted, is appropriate, is open to debate. In a law review article, Professor Leubsdorf opined that:

...[O]pposing counsel should be free to contact directly any employee, high or low, who is a possible witness without notice to the employer's counsel. The public interest in obtaining testimony should not be frustrated by the massive embargo that a warned employer could impose.

Leubsdorf, *Communicating With Another Lawyer's Client: The Lawyer's Veto And The Client's Interest*, 127 U.Pa.L.Rev. 683, 708 (1979) (footnotes omitted).

More generally, courts have looked with considerable disfavor on attempts to place limits on a lawyer's ability to interview prospective witnesses, even when judicially imposed. *International Business Machines Corp. v. Edelstein*, 526 F.2d 37, 41–42 (2 Cir., 1975). Most of the reported cases, however, have dealt with governmental agencies which attempt to restrict their employees from speaking to counsel

for opposing parties; courts have uniformly prohibited any such restrictions. *Rodriguez v. Percell*, 391 F.Supp. 38 (S.D.N.Y., 1975); *United States v. City of Milwaukee*, 390 F.Supp. 1126 (E.D. Wis., 1975); *Vega v. Bloomsburgh*, 427 F.Supp. 593 (D. Mass., 1977). It is to be noted that the opinions of both the New York and Massachusetts committees expressly state that their interpretation of DR 7–104(A)(1) does not purport to govern interviews of government employees.

■ In view of these competing interests, the question becomes in what circumstances does a corporate party show "good cause" (as that term is used in Rule 26(c), F.R.Civ.P.) for the entry of a protective order which prohibits opposing counsel from communicating with its employees except with corporate counsel's consent. In my opinion, it is impossible to fashion a rule which would govern all cases. Whether or not "good cause" exists for the entry of such an order must depend on the facts and circumstances of the particular case.

■ An initial question must be whether or not the subject matter of opposing counsel's inquiries to the employee is such that the employee's statements to opposing counsel are likely to be admissible against the corporation pursuant to Rule 801(d)(2)(D), F.R.Evid. The answer to this question depends on whether the employee's statements to opposing counsel concern a matter within the scope of the employee's employment. In the instant case, plaintiff's counsel seeks to question the female employees who made complaints about alleged sexual advances the plaintiff made to them at the time the plaintiff was a Lotus employee. The questioning will be for the purpose of eliciting facts regarding what the plaintiff said and/or did which formed the basis of the complaints and the content of the complaints which were actually made to management. In my opinion, the employee's statements on this subject matter are likely to be found to concern a matter within the scope of the employee's employment and thus likely to be admissible against the corporation pursuant to

Rule 801(d)(2)(D), F.R.Evid. It is certainly within the scope of the employee's employment to relate facts relating to sexual harrassment by another employee, especially in view of the requirements that employers have an adequate and reliable reporting and investigation procedure to deal with such complaints.

A further inquiry which is relevant in deciding whether or not to issue a protective order is the need, in the particular circumstances of the case, for the corporation to have its counsel present to insure "effective representation" of the corporation. Although the bar committees quoted *supra* take the position that a prohibition against an attorney communicating with a corporation's employee without the consent of corporate counsel is needed in all cases to insure the corporation's right to effective representation, it is clear that there are varying degrees of need. I cannot subscribe to the view that the corporation's right to "effective representation" requires an absolute prohibition in all instances against interviews with corporate employees concerning matters within the scope of the employees' employment. The competing interests, articulated by Professor Leubsdorf and quoted *supra*, are of sufficient importance that the Court must be able to strike a balance in individual cases which takes account of the competing interests.

In the instant case, the female employees allegedly complained to someone in authority at the corporation that the plaintiff was improperly pressuring them for sexual favors. According to Lotus, these complaints formed part of the basis for the plaintiff's termination. The plaintiff seeks to prove that this reason was and is pretextual and that the actual reason was based on his race and national origin.

In these circumstances, the corporate-defendant's need to have counsel present when the female employees are interviewed is significantly less than it might be in other contexts. If the female employees' complaints formed part of the basis for the plaintiff's discharge, the corporate-defend-

ant presumably will be able to offer evidence, through its records and/or testimony of those to whom the female employees complained, of the fact that the complaints were made and what the content of those complaints were. In short, Lotus presumably has made a record or can produce testimony as to what was reported to it by the female employees. If the female employees' statements to plaintiff's counsel differ substantially from what the recipients of the complaints testify the female employees said, the trier of fact will be faced with the task of determining what weight to give to the conflicting testimony. While the statements to plaintiff's counsel may be admissible against the corporate employer pursuant to Rule 801(d)(2)(D), F.R.Evid., the trier of fact will be faced with conflicting statements of agents of the corporate employer, both of which may be admissible against the corporate employer. But to the extent of a conflict between the two, only one or the other will bind the corporate employer depending on which one the trier of fact finds to be the truth.

Plaintiff's counsel, on the other hand, faces a considerably more difficult task in gathering evidence to prove that the reasons given for the termination were pretextual. One avenue of investigation would surely be to try to prove that the female employees did not complain to Lotus, or if they did, the content of their complaints varied substantially from what Lotus claims. This type of witness interview has traditionally been part of a trial lawyer's preparation and is conducted in the presence of an attorney only when the witness has personal counsel. As the Second Circuit has noted, an interview is quite different from a deposition. The Court wrote:

> ...[T]here is little relation between them. A lawyer talks to a witness to ascertain what, if any, information the witness may have relevant to his theory of the case, and to explore the witness' knowledge, memory and opinion—frequently in the light of information from other sources.

*International Business Machines v. Edelstein, supra,* 526 F.2d at 41.

And in a footnote at the end of this passage, the Court continued:

> In contrast to the pre-trial interview with prospective witnesses, a deposition serves an entirely different purpose, which is to perpetuate testimony, to have it available for use at the trial, or to have the witnesses committed to a specific representation of such facts as he might present. A desire to depose formally would arise normally after preliminary interviews might have caused counsel to decide to take a deposition.

*Id.,* footnote 4.

Having opposing counsel present at interviews tends to inhibit the free and open discussion which an attorney seeks to achieve at such interviews. *Id.*

Thus, in striking a balance in the instant case, I find that the balance tilts in favor of allowing plaintiff's counsel to interview the female employees out of the presence of Lotus' counsel. Put another way, I do not find "good cause" for the entry of a protective order which would prohibit plaintiff's counsel from interviewing the female employees outside of the presence of Lotus' counsel.

■ I do think that there is "good cause" for prohibiting the plaintiff personally from attempting to interview the female employees and from being present when plaintiff's counsel interviews them. There is absolutely no need for the plaintiff personally to participate in the interviews, and considering the asserted nature of the female employees' complaints, there is "good cause" to prohibit further contact between the plaintiff and the employees in the conduct of this litigation.

■ It should also be noted that whether or not to consent to an interview with plaintiff's counsel is entirely up to the particular employee. An employee may consent to an interview by plaintiff's counsel, may refuse to be interviewed by plaintiff's counsel, and may consent to an interview with plaintiff's counsel only if her own attorney is present

and/or only if Lotus' attorney is present. But Lotus cannot insist that the interview take place only in the presence of its counsel if the witness does not seek to have Lotus' counsel present.

Accordingly, it is ORDERED that Defendants' Motion For Entry Of A Protective Order, Etc. (# 20) be, and the same hereby is, ALLOWED to the extent that the Court issues the following Order, and otherwise DENIED.

It is ORDERED that the following guidelines govern any interviews by plaintiff's counsel of the female employees of Lotus who complained of the plaintiff's conduct toward them and whose complaints allegedly formed a basis for the plaintiff's termination:

(1) The plaintiff personally is PROHIBITED from contacting or attempting to contact any said female employees of Lotus in connection with this litigation.

(2) Plaintiff's counsel may contact said female employees of Lotus for the purpose of attempting to interview them.

(3) When plaintiff's counsel initially contacts said female employees, he shall immediately disclose his capacity as counsel for plaintiff in the above-styled litigation.

(4) If any of said female employees consent to be interviewed, the plaintiff shall not personally be present at the interview.

(5) Any request by any said female employee that the interview take place only in the presence of her personal attorney and/or Lotus' attorney shall be honored.

(6) Lotus shall advise said female employees that they may, if they wish, agree to be interviewed by plaintiff's counsel to discuss matters which relate to this case and that no disciplinary action or other adverse action will be taken by Lotus against any said female employee if the employee consents to such interview. Lotus may advise said female employees

that they are free to refuse to meet with plaintiff's counsel if they wish, and if they wish, they may consent to be interviewed only in the presence of Lotus' counsel. Lotus shall, however, make it clear that these decisions are for the employee to make and that Lotus takes no position one way or the other on the decisions the particular employee makes on these issues.