**Martha A. MORRISON**

v.

**BRANDEIS UNIVERSITY, Evelyn E. Handler, Anne P. Carter, David Kaplan, Zina Jordan, Denah Lida, Patricia A. Johnston.**

**Civ. A. No. 87–2745–S.**

United States District Court,
D. Massachusetts.

March 31, 1989.

Richard W. Coleman, Mary T. Sullivan, Segal, Roitman & Coleman, Boston, Mass., for plaintiff.

Deborah S. Steenland, Richard Ward, Ropes & Gray, Boston, Mass., Greggory Keith Spence, Office of General Counsel, Brandeis University, Waltham, Mass., for defendants.

MEMORANDUM AND ORDER ON MOTION FOR ORDER CONCERNING ACCESS TO WITNESSES EMPLOYED BY DEFENDANT BRANDEIS UNIVERSITY (# 26)

ROBERT B. COLLINGS, United States Magistrate.

Martha Morrison, claiming that the decision of Brandeis University to deny her tenure was based on her sex, religion and ancestry, has brought suit against the university, its President, the Dean of the Faculty, the Assistant Dean of the Faculty, the Dean of the Graduate School and two professors. The specific claims under federal law are discrimination on the basis of sex and religion in violation of Title VII of the Civil Rights Act of 1964 (42 U.S.C. § 2000e et seq.) and discrimination on the basis of ancestry in violation of the Civil Rights Act of 1861 (42 U.S.C. § 1981). Her claims under Massachusetts law are sex and religious discrimination in violation of the Massachusetts Civil Rights Act (M.G.L.A. Chapter 12, §§ 11H and 11I) and M.G.L.A. Chapter 151B, § 4(1), breach of contract, breach of implied-in-fact contract, negligence, interference with an advantageous relationship, and defamation.

As part of her pre-trial investigation, plaintiff's attorney seeks to interview certain non-party employees of Brandeis University without advance notice to Brandeis' counsel. Specifically, plaintiff's counsel wishes to interview non-party members of the committees which made recommendations on the question of her tenure, including members of (1) the departmental committee (consisting of faculty members), (2) the *ad hoc* committee (consisting of faculty members and outside reviewers), (3) members of the Faculty Senate, and (4) members of the committee which comprised the Presidential Review. According to the Complaint, the departmental committee voted 3–2 in favor of granting tenure, and both the majority and minority made written recommendations to the Dean. The Dean appointed the *ad hoc* committee, which, according to the Complaint, voted 5–3 against the award of tenure. It is not clear whether there were written recommendations by either the majority, minority or both. The Faculty Senate became involved because its Council participates to some extent in the Presidential Review, and during that review, the Council made some recommendations in order to cure deficiencies which it perceived in the tenure process in plaintiff's case. Again, according to the Complaint, the Council's recommendations were not followed.

Disciplinary Rule 7–104(A)(1) provides:

(A) During the course of his representation of a client, a lawyer shall not:

(1) Communicate or cause another to communicate on the subject of the representation with a party he knows to be represented by a lawyer in that matter unless he has the prior consent of the lawyer representing such other party or is authorized to do so.

Formal Opinion 82–7 of the Massachusetts Bar Association states that DR 7–104(A)(1) prohibits communications with any agents or employees of a corporate party in the situation in which the agent's or employee's statements could be admitted against the corporation at trial pursuant to Rule 801(d)(2)(D), F.R.Evid., which provides:

(d) *Statements which are not hearsay.* A statement is not hearsay if

\* \* \* \* \* \*

(2) *Admission by party opponent.* The statement is offered against a party and is ... (D) a statement by the party's agent or servant concerning a matter within the scope of the agency or employment made during the existence of the relationship ...

Because the Massachusetts Bar Association's interpretation of DR 7–104(A)(1) prohibits her from doing so unless she is "authorized to do so," plaintiff's counsel has filed a Motion For Order Concerning Access To Witnesses Employed By Defendant Brandeis University (# 26) seeking authorization to interview various persons employed by Brandeis University who are not parties to the case but may have relevant information on the issues raised by the allegations of the Complaint.

Brandeis University, through counsel, opposes any order authorizing interviews of faculty or administrators "... who were directly involved in the University's decision to deny plaintiff tenure." Defendant Brandeis University's Opposition, Etc. (# 29) at p. 2. It has no objection to plaintiff or her counsel contacting those members of the *ad hoc* committee and the Presidential Review Committee who are not at present employed by Brandeis University. *Id.* (footnote 1). Further, despite the fact that the interpretation given to DR 7–104(A)(1) by the Massachusetts Bar Association in its Formal Opinion 82–7 would prohibit plaintiff's counsel from contacting any present employee of Brandeis University whose statement could be admissible against Brandeis without advance notice to Brandeis' counsel, Brandeis represents that it "... has informed plaintiff's counsel that she may attempt to speak with faculty members or other Brandeis employees, other than those who served on the plaintiff's tenure committees." Defendant Brandeis University's Opposition, Etc. (# 29) at p. 4. However, Brandeis asserts that:

> It would be improper, however, for the plaintiff to have ex parte contact with the high ranking professors and administrators who served on the plaintiff's tenure committees. These high level employees, who were entrusted with the important job of evaluating a candidate for tenure, are the equivalent of managerial employees. These employees were directly involved in the decision not to grant the plaintiff tenure which is the basis of her allegations.

*Id.* at 5.

This motion requires that I revisit ground which I covered three years ago in the case of *Mompoint v. Lotus Development Corp.*, 110 F.R.D. 414 (D.Mass., 1986). In that case, I noted that the interpretation of DR 7–104(A)(1) which had been given by the Massachusetts Bar Association in Formal Opinion 82–7 gave a broad reading to the term "party" when the party was a corporation. Specifically, the term "party" encompasses any employee or agent of a corporate party in the situation in which the employee or agent's statement could be admissible against the corporation at trial pursuant to Rule 801(d)(2)(D), F.R.Evid. *Mompoint, supra,* 110 F.R.D. at 417.

Brandeis seems to be arguing for a distinction based on whether the particular employee is at the level of a "manager," "officer," or "director," or as some cases put it, whether a particular employee is a member of the "control group" of the corporation. Courts have drawn a distinction between members of the "control group" on the one hand and mere "employees" on the other, holding that the former are "parties" as the term is used in DR 7–104(A)(1) and the latter are not. *See Wright By Wright v. Group Health v. Group Health Hosp.*, 103 Wash.2d 192, 691 P.2d 564 (1984); *Frey v. Department of Health and Human Services*, 106 F.R.D. 32 (E.D.N.Y., 1985); *Porter v. ARCO Metals Company*, 642 F.Supp. 1116 (D.Mont., 1986). These Courts have, in essence, applied the test of Rule 32(a)(1), Fed.R.Civ.P., which provides that a deposition of "anyone who at the time of taking the deposition was an officer, director, or managing agent ... of a ... corporation which is a party may be used by an adverse party [at court proceedings] for any purpose." The theory is that since statements of officers, directors and managing agents can bind the corporation, these persons are as much "parties" for purposes of DR 7–104(A)(1) as the corporation itself, and, thus, interviews of these persons by opposing counsel without the consent of the corporation's attorneys should be prohibited.

This "control group" test represents an attempt by the Courts to strike a balance between the corporation's need for "effective representation" and the adverse party's need to gather information on an informal basis. However, the problem with the test is that Rule 801(d)(2)(D), F.R.Evid., is far broader than Rule 32(a)(2), Fed.R. Civ.P., and does not limit the admissibility of statements against a corporation to statements made by its officers, directors or managing agents. Rather, it permits the admission by a party-opponent against a party of "a statement made by that party's *agent or servant* concerning a matter

within the scope of the agency or employment, made during the existence of the relationship." One can envision a factual situation in which an agent or servant who is not a member of the "control group" but who, as a result of his employment and within the scope of his employment, had far greater knowledge and involvement in a situation which might result in liability to his corporate employer such that "effective representation" for the corporation would require that that employee be considered a "party" as the term is used in DR 7–104(A)(1). Under the "control group" test, the employee would not be a party for purposes of DR 7–104(A)(1) unless the definition of the term "managing agent" could be stretched to cover him. *See Boston Diagnostics Development Corp., Inc. v. Kollsman Manufacturing Co.*, 123 F.R.D. 415 (D.Mass.1988).

The cases which have approved of the "control group" test or similar test dividing corporate agents into two categories either do not deal with the problem created by the breadth of Rule 801(d)(2)(D), F.R.Evid., or seek other means to avoid the problem.

Of course, the Supreme Court of Washington in the case of *Wright By Wright v. Group Health v. Group Health Hosp., supra*, had no need to consider the effect of this rule, and, in fact, did not mention it. The Court relied on the state law of Washington to fashion the "managing-speaking" test whereby only those who have the authority to "speak" for the corporation can bind it. So far as appears, Washington had not adopted a rule of evidence which has the broader test as is found in Rule 801(d)(2)(D), F.R.Evid.

The Court in *Porter v. ARCO Metals Company, supra*, did not mention Rule 801(d)(2)(D), F.R.Evid., perhaps because it was not brought to its attention. The Court merely adopted the "control group" test and stated that it was "consistent with ... the Federal Rules of Civil Procedure regarding discovery practices." *Id.*, 642 F.Supp. at 1118.

The Court in *Chancellor v. Boeing Co.*, 678 F.Supp. 250 (D.Kan., 1988) adopted the Supreme Court of Washington's "manag-

ing-speaking" test but apparently expanded it to cover employees whose statements are admissible against the corporation pursuant to Rule 801(d)(2)(D), F.R.Evid. Thus, the Court wrote:

> A corporate employee is a "party" under DR 7–104(A)(1) if he or she has managerial responsibility, his or her acts or omissions in connection with this matter may be imputed to the corporation for purposes of civil or criminal liability, *or his or her statements may be an admission on the part of the organization.*

*Id.*, 678 F.Supp. at 253 (emphasis added). The third clause appears co-extensive with Rule 801(d)(2)(D), F.R.Evid., and seems to me to be a significant expansion of the "managing-speaking test" of the *Wright* case.

In *Massa v. Eaton Corp.*, 109 F.R.D. 312 (W.D.Mich., 1985), the Court noted explicitly that the "control group" test is too restrictive in view of the broad provisions of Rule 801(d)(2)(D), F.R.Evid., and pointed out that the comment to the new Rule 4.2 of the ABA's Model Rules of Professional Conduct, the successor to DR 7–104(A)(1), provides that:

> In the case of an organization, this Rule prohibits communications by a lawyer for one party concerning the matter in representation with persons having managerial responsibility on behalf of the organization, *and with any other persons* [1] whose act or omission in connection with the matter may be imputed to the organization for purposes of civil or criminal liability *or* [2] *whose statement may constitute an admission on the part of the organization.*

*Id.*, 109 F.R.D. at 314 (emphasis added).

Lastly, in the case of *Frey v. Department of Health and Human Services, supra*, Magistrate Caden, in allowing plaintiff's counsel to interview non-managerial employees, reasoned that since he found that the employees were not "parties" as the term is used in DR 7–104(A)(1), their statements could not be admissible against the corporation pursuant to Rule 801(d)(2)(D), F.R.Evid. With respect, this reasoning strikes me as circular. The

problem is that Rule 801(d)(2)(D), F.R. Evid., provides that the employees' statements may be admissible as a statement of the corporation and does not contain any qualification that the use is permitted only if the employee is found to be a party as the term is used in DR 7–104(A)(1). However, what Magistrate Caden may be saying is that if he rules that the employees are not "parties" as the term is used in DR 7–104(A)(1) and opposing counsel interviews the employees out of the presence of corporate counsel, opposing counsel thereby waives any right he or she may have had to introduce the statements against the corporation at trial pursuant to Rule 801(d)(2)(D), F.R.Evid. This solution, which operates as a sort of exclusionary rule, seems to me to be unsatisfactory.

In my opinion, all of these tests, i.e. the "managing-speaking" test, the "control group" test, and the test embodied in the comment to the new Rule 4.2 of the ABA's Model Rules of Professional Conduct are inadequate. They are either too restrictive in view of the extent to which employees' statements may be admissible against the corporation pursuant to Rule 801(d)(2)(D), F.R.Evid., or they are too broad in defining a "party" to be any employee whose statement *may* be admissible against the corporation under that rule. In sum, none of the tests succeeds in striking a balance which accommodates these competing needs in every case. A more particular balance is needed.

■ This is why I opted for a case-by-case balancing test in the *Mompoint* decision and why I adhere to that test in the instant case. A plaintiff's need to gather information on an informal basis on the one hand and the defendant's need for effective representation on the other can, in most cases, only be balanced with reference to the facts and circumstances which appertain to the particular case at hand. Those tests which purport to strike a universal balance in all cases do not, in my view, adequately meet the needs of either party.[1]

■ Turning to the facts and circumstances of the instant case, plaintiff alleges discrimination by Brandeis on the basis of her sex, religion and ancestry in the decision to deny her tenure. No doubt, Brandeis will advance non-discriminatory reasons for the decision. Whether this is a case in which the plaintiff has "direct evidence" of discrimination, *Fields v. Clark University*, 817 F.2d 931 (1 Cir., 1987) or one in which the plaintiff has to prove that the non-discriminatory reasons for the decision are pretextual, *Loeb v. Textron*, 600 F.2d 1003 (1 Cir., 1979), the focus at trial will be on whether there was unlawful discrimination, and if so, whether the decision to deny tenure would not have been made but for the discrimination. Within this focus, a determination of whether Brandeis' asserted non-discriminatory reasons were, in fact, the reasons for the decision or were, rather, a pretext for unlawful discrimination, will be crucial. Brandeis' stated reasons for its decision will be crucial. The evidence on these issues which might be favorable to the plaintiff is, for the most part, unknown to the plaintiff and possessed by those who participated in the decision-making process. Thus, I find that plaintiff's counsel's need to obtain information from those non-parties who participated in the decision-making process is sub-

---

1. I should point out that I am not criticizing the existence of DR 7–104(A)(1) or similar rules or the interpretation given to them by the ABA and various bar associations. I am dealing with the more limited question of when the Court should apply the exception to the rule ("unless authorized to do so") and authorize an attorney to interview employees of a defendant-corporation whose statements may be admissible against the corporation pursuant to Rule 801(d)(2)(D), F.R. Evid. I do not advocate abolition of the DR 7–104(A)(1) or similar rules nor the interpretations given them. The rules serve the important function of defining permissible conduct on the part of an attorney. Thus, I also do not believe that it would be appropriate for counsel to decide unilaterally whether or not to interview a corporate-party's employees without notice to the corporation's attorney. Rather, my point is that when an attorney seeks authorization to interview a corporate-party's employees without the corporate-party's attorney present, the Court must analyze the interests and needs on both sides on the basis of the facts and circumstances of the case, not on the basis of some test which is universally applicable to all cases without regard to the particularities of the specific case in which authorization is sought.

stantial. To obtain the information by interviewing the persons (who are not individually named as defendants) who were involved in the decision-making process is appropriate for all of the reasons cited by the Second Circuit in the case of *International Business Machines v. Edelstein*, 526 F.2d 37, 41 (2 Cir., 1975) which I recounted in the *Mompoint* decision. *Mompoint, supra*, 110 F.R.D. at 419. I particularly note the tendency which the presence of opposing counsel has to inhibit the free and open discussion which an attorney seeks to achieve at such interviews. *Id.*

There is another point which plaintiff's counsel made at oral argument. Many, if not all, of the persons sought to be interviewed will have evidence favorable to the plaintiff in that they were in favor of granting tenure to the plaintiff. They will most likely be called as witnesses by the plaintiff at trial. Unless plaintiff's counsel is authorized to contact these witnesses without notice to Brandeis' counsel, she will be in a position of not being able to even talk to her witnesses prior to a deposition or trial without Brandeis' counsel being present. Unless authorization is granted, two important functions which counsel traditionally play in litigation would be precluded. The first is the function of interviewing witnesses without the presence of opposing counsel in order to gain information as noted in *International Business Machines v. Edelstein, supra*, 526 F.2d at 41. The second is the function of preparing witnesses favorable to a client before testimony at a deposition or at trial without the presence of opposing counsel. In short, without authorization, plaintiff's counsel's ability to prepare her case in the traditional manner is substantially circumscribed.

From Brandeis' point of view, it is true that the statements made to plaintiff's counsel by the various Brandeis faculty members who were members of the committees which participated in the decision might be admissible at trial against Brandeis pursuant to Rule 801(d)(2)(D), F.R. Evid. However, this fact, in and of itself, does not mean that Brandeis' counsel has to be present at the interviews of these committee members in order to insure "effective representation" of Brandeis. I have no doubt that Brandeis, at the time decisions were being made, caused a meticulous written record to be made which detailed the non-discriminatory reasons for the decision and the facts which supported the decision. This is especially so if, as is represented by plaintiff's counsel, Brandeis had the advice of its attorneys during the process by which the decision was made. In short, Brandeis has made its record and has more than sufficient ability to defend itself not only by the record which it compiled during the decision-making process but also by the testimony of those individually-named defendants who made the decision to deny tenure.

In sum, it is my opinion that in the circumstances of this case, the needs of the plaintiff and those interests which serve the search for truth and the effective preparation for trial outweigh any need which counsel for Brandeis has to be present at the interviews in order to afford Brandeis "effective representation" by counsel. *See* Leubsdorf, *Communicating With Another Lawyer's Client: The Lawyer's Veto And The Client's Interest*, 127 U.Pa.L.Rev. 683, 708 (1979) cited in *Mompoint, supra*, 110 F.R.D. at 417.

Accordingly, it is ORDERED that the Motion For Order Concerning Access To Witnesses Employed By Defendant Brandeis University (# 26) be, and the same hereby is, ALLOWED. Plaintiff's attorney is hereby AUTHORIZED to interview, without prior notice to or consent from Brandeis' counsel, those members of the departmental review committee, the *ad hoc* review committee, the Faculty Senate, and the members of the Presidential Review Committee who are currently employed by Brandeis University and who are not named as individual defendants. However, the following guidelines shall apply to such interviews:

(1) When plaintiff's counsel initially contacts any person as to which authorization to interview has herein been given (hereinafter, "any person"), she shall immediately disclose her capaci-

ty as counsel for the plaintiff in the above-styled litigation and the purpose of the contact, i.e. to request an interview.

(2) Whether or not to grant the request for an interview is completely up to the person, and the person's decision shall be respected.

(3) Any request by any person that the interview take place only in the presence of his or her personal attorney and/or the presence of Brandeis' attorney shall be honored.

(4) Brandeis *shall* advise all persons within the group which plaintiff's counsel has herein been given authorization to interview that they may, if they wish, agree to be interviewed by plaintiff's counsel to discuss matters which relate to this case and that no disciplinary or other adverse action will be taken by Brandeis against any person who consents to an interview. In addition, Brandeis *may* advise any persons within the group which plaintiff's counsel has herein been given authorization to interview that they are free to refuse to consent to an interview by plaintiff's counsel if they wish, and, if they wish, they may consent to be interviewed only in the presence of Brandeis' counsel. Brandeis shall, however, make it clear these decisions are for the persons to make and that Brandeis takes no position one way or the other on the decisions the particular person makes on these issues.