Cratsley, J.
This case arises out of the former employment relationship between the plaintiff, Kathleen Stanford (“Stanford”), and defendants, Harvard University and Francis D. Riley, Chief and Commanding Officer of the Harvard University Police Department (collectively “Harvard”). Stanford, a former sergeant with the Harvard University Police Department (“HUPD”), alleges that she was denied a promotion to positions for which she was qualified because of her gender. On three occasions, Stanford’s attorneys from the law firm of Messing and Rudavsky, P.C. (“M&R”) contacted five of HUPD’s then current employees and obtained sworn affidavits from them.
Before this court is Harvard’s request for remedial sanctions against M&R for knowingly eliciting information from Harvard employees without consent of Harvard or authorization of the court in violation of Mass.R.Prof.Conduct 4.2 and its predecessor DR 7-104(A). M&R maintains that they did not violate any rules and that their contacts with HUPD employees were at all times proper. For the reasons set forth below, after several non-evidentiary hearings, Harvard’s motion is ALLOWED in part.
BACKGROUND
In January of 1992 Stanford filed a complaint with the Massachusetts Commission Against Discrimination (“MCAD”) under G.L.c. 15 IB, alleging that HUPD had discriminated on the basis of gender by denying her promotional opportunities and compensation afforded to similarly situated male police officers. In its defense, Harvard filed a position statement detailing its defenses. To rebut Harvard’s position statement, Stanford submitted affidavits of five HUPD employees, two were- HUPD’s lieutenants and three were Stanford’s fellow officers.
In November and December of 1997, and again in January of 1998, M&R communicated and obtained these affidavits from the five HUPD employees. Prior to speaking with these employees, M&R neither sought consent from Harvard’s counsel nor notified Harvard that it intended to take the HUPD employee's sworn statements. M&H also failed to seek permission from either a court or the MCAD prior to speaking with the HUPD employees.
Two of the five affiants, John Rooney (“Rooney”) and Edward Sheridan (“Sheridan”), were lieutenants when M&R questioned them. Rooney had held the rank of lieutenant since 1990 and Sheridan since 1991. Both Rooney and Sheridan had significant managerial duties as a function of their rank. Each lieutenant in the HUPD was responsible for managing a division of officers, which included supervision and evaluation of sergeants under their command. Rooney and Sheridan both supervised Stanford by directing and evaluating her work performance.
HUPD has a hierarchical management structure with the Chief at the highest rank. Until the fall of 1996 when two captains were added to the managerial ranks, both lieutenants reported directly to the Chief. At the time M&R communicated with HUPD employees, lieutenants reported to captains who, in turn, reported to the Chief. The other three affiants were Officers Donahue and Morrison, and dispatcher Bonney Louison.
DISCUSSION
Harvard’s motion for sanctions is based on Disciplinary Rule 7-104(A)[2] and Rule 4.2 of the Massachusetts Rules of Professional Conduct.[3] Rule 4.2 is for all intents and purposes the same as DR 7-104(A)(l). Comment [4] to Rule 4.2, however had no counterpart in DR 7-104(A).[4] Defendants claim that these ethical rules prohibited M&R from contacting any current HUPD employees to discuss any subject within the scope of their employment.[5] The thrust of Harvard’s argument is that any present *361 employee of HUPD who can bind Harvard under Fed.R.Evid. 801 (d)(2)(D), or under the common law, is a “party” for purposes ofDR 7-104(A)( 1) and Rule 4.2. Rule 801(d)(2)(D) of the Federal Rules of Evidence provides as follows:
A statement is not hearsay if-
(2) The statement is offered against a party and is
(D) a statement by his agent or servant concerning a matter within the scope of his agency or employment, made during the existence of the relationship.
Because statements by its current employees may constitute binding admissions upon Harvard pursuant to these rules, as well as under the common law rule of master and servant, Harvard argues that M&R was forbidden from having ex parte communications with HUPD employees without its consent.[6] M&R asserts that Massachusetts had not adopted a per se requirement that opposing counsel seek permission from the court prior to conducting ex parte interviews of corporate defendants, but rather employed a balancing test to determine whether to authorize this form of ex parte contact with an organization’s employees.
Historically, courts have justified DR 7-104(A)(1) and Rule 4.2 by “the need to preserve the mediating role of counsel on behalf of their clients and to protect clients from overreaching by counsel for adverse interest.” See Pratt v. National R.R. Passenger Corp., 54 F.Sup. 2d 78, 79 (D.Mass. 1999). Indeed, Massachusetts courts have interpreted the reach of DR 7-104(A) and Rule 4.2 broadly. See Kaveney v. Murphy, 97 F.Sup. 2d 88, 92 (D. Mass. 2000); Rockland Trust Co. v. Computer Assoc. Int'l., Inc., 1999 WL 95722 (D.Mass.). DR 7-104(A) was “measured not by reference to the attorney-client privilege at all, but rather by the scope of the evidentiary rule admitting the statements of an employee in an action against the corporate employer.” Pratt, 54 F.Sup.2d at 79. Under the Massachusetts common law evidentiary rules, courts admit any “statement by the party’s agent or servant concerning a matter within the scope of the agency or employment, made during the existence of the relationship,” against a party opponent. Fed.R.Evid. 801(d)(2)(D); Ruszcyk v. Secretary of Public Safety, 401 Mass. 418, 421-22 (1988); see also Liacos, Handbook of Massachusetts Evidence, Sec. 8.8.6a (1994). In interpreting the scope of DR 7-104 and Rule 4.2, many courts have incorporated the relevant evidentiary rules to define its reach. See Hurley v. Modern Continental Constr. Co., 1999 WL 95723 at * 2 (D.Mass. 1999) (“The breadth of the [relevant evidentiary rules] together with the use of the word ‘may’ in Comment [4] makes it highly likely that any questioning of an opposing corporate party’s current employees on an issue likely to be raised in the lawsuit would be prohibited”); Siguel v. Trustees of Tufts College, 1990 WL 29199 (D.Mass. 1990) (analyzing reach of DR 7-104); Morrison v. Brandeis Univ., 124 F.R.D. 14, 18 (D.Mass. 1989); and Mompoint v. Lotus Dev. Corp., 110 F.R.D. 414, 415-18 (1986). Massachusetts, therefore, follows a rule strikingly protective of corporations regarding employee interviews. This is because Massachusetts common law is strikingly liberal on the admissibility of such interviews if properly held with an employee and if matters relevant to the litigation are discussed.
The parties do not contest that M&R engaged in ex parte contact without seeking prior legal authorization from the court. Prior to the adoption of Rule 4.2, however, Massachusetts explicitly recognized that “the ethical rules prohibited contact which could produce statements admissible against the corporationthose statements made by employees concerning matter within the scope of their employmentand not just contact with high-level or managerial employees.” Siguel, 1990 WL 29199 at *2 (“plaintiff can only interview current employees ex parte if this Court applies the ‘unless . . . authorized to do so’ exception by issuing an order compelling access to potential employee-witnesses”); Morrison, 125 F.R.D. at 18, n 1.
This Court agrees with M&R’s assertion that Siguel and Morrison set forth a case-by-case balancing test to determine whether to authorize ex parte contact. Yet, M&R’s reliance on them is misplaced. In both of these decisions, the issue before the courts was not to define who the attorney could contact without the permission of the organization’s counsel, but whether to provide authorization to permit the ex parte contact as an exception to the general prohibition on such contact. Moreover, those decisions emphatically note that the court, not counsel, performed the relevant balancing test. Here, M&R acted unilaterally.
Thus, regardless of decisions in other jurisdictions, it cannot be said that M&R’s ex parte contact was permissible under either DR-7-104(A) or Rule 4.2. M&R had ex parte communications with five current HUPD employees and now intends use their statements in this case as evidence of disparate treatment of female employees by Harvard. Both the underlying policy of DR 7-104 and the Official Comment to Rule 4.2 make clear that the rules were intended to forbid ex parte communications with all institutional employees whose acts or omissions could bind or impute liability to the organization or whose statements could be used as admissions against the organizations, presumably pursuant to Federal Rule of Evidence 801(d)(2)(D). See Rockland Trust Co. v. Computer Assoc. Int’l., Inc., 1999 WL 95722 (D. Mass.); Siguel supra; Morrison, supra; and Mompoint, supra. Accordingly, this Court holds that the communication between M&R and Harvard’s employees was improper.
*362 Unfortunately for this case, there is no Massachusetts case law describing the appropriate remedy for violations of these ethical rules. This Court holds, however, that the rule’s importthat organization members whose conduct involves the matter in representation should not be the object of ex parte communicationsshould have put M&R on notice as to the potentially serious problem regarding its course of action.[7] In such an uncertain area of ethical conduct, a prudent attorney would have given notice to opposing counsel of the intent to take such a statement and/or have come to court for permission to do so. Indeed, in Morrison, supra, Magistrate Collings noted that he did not “believe that it would be appropriate for counsel to decide unilaterally whether or not to interview a corporate-party’s employees without notice to the corporation’s attorney.” Morrison, 125 F.R.D. at 18, n. 1. Here, M&R choose to skate near the ethical line and to do so was at their peril. See Camden v. State of Maryland, 910 F.Sup. 115, 1124 (D.Md 1996) (“the issue is not whether counsel incorrectly interpreted unsettled law, but whether [counsel] displayed an inappropriate disregard for the unsettled nature of that law”), quoting University Patents, Inc. v. Kligman, 737 F.Sup. 325, 329 E.D.Pa. 1990; In re Air Crash Disaster, 909 F.Sup. 11116, 1125 (N.D.Ill.1995) (“The ‘chalk lines’ drawn by the ethical rules are meant to be avoided at all costs. The goal should not be to come so close to the ‘chalk line’ that one is covered in white dust”).
This Court, therefore, grants Harvard’s motion insofar as it pertains to prohibiting M&R’s further use in this lawsuit of any statement given by the five affiants to M&R. If, however, M&R should succeed in gathering the same information from a proper source, e.g. from a properly noticed deposition, that information may be used at trial. The five affiants may, however, be called as witnesses by either side at trial. This court denies Harvard’s motion as it pertains to disqualifying Stanford’s counsel, members of M&R, from further representation of the plaintiff in this case. Further, this Court orders M&R to pay all of Harvard’s attorneys fees and costs in litigating this motion for sanctions. Harvard’s counsel shall submit a detailed statement of such attorneys fees and costs to this Court within 30 days, and Stanford’s counsel shall have 30 days to reply.
ORDER
For the foregoing reasons, defendant’s motion is ALLOWED in part. It is hereby ORDERED (1) that the statements of Rooney, Sheridan, Donahue, Morrison, and Louison shall not be used by plaintiff or her counsel in any way in this lawsuit, and (2) that plaintiffs counsel, Messing and Rudavsky, shall pay attorneys fees and costs to Harvard. The amount of such attorneys fees and costs will be set by this Court receiving affidavits from all interested counsel using the filing schedule described above.
In the case of an organization, this Rule prohibits communications by a lawyer . . . concerning the matter in representation with persons having managerial responsibility on behalf of the organization with regard to the subject of representation, and with any other person whose act or omission in connection with that matter may be imputed to the organization for purposes of civil or criminal liability or whose statement may constitute an admission on the' part of an organization.

 disciplinary Rule 7-104 provided:
(A) During the course of his representation of a client a lawyer shall not:
(1) Communicate or cause another to communicate on the subject of the representation with a party he knows to be represented by a lawyer in that matter unless he has the prior consent of the lawyer representing such other party or is authorized to do so.

 Rule 4.2 provides:
In representing a client, a lawyer shall not communicate about the subject of the representation with a person the lawyer knows to be represented by another lawyer in the matter, unless the lawyer has the consent of the other lawyer or is authorized by law to do so.

 Comment [4] to Rule 4.2 provides, in pertinent part:

 The majority of M&R’s communication occurred in November and December of 1997 and minimal communication was made in January of 1998. Because Rule 4.2 was not formally adopted by the Supreme Judicial Court of Massachusetts until January i, 1998, DR 7-104(A)(l) applies to communications in 1997, and Rule 4.2 applies communications in 1998.

 Harvard also relies upon a Formal Opinion of the Committee of Professional Ethics of the Massachusetts Bar Association which interpreted DR 7-104(A)(1) broadly to prohibit a lawyer from interviewing current employees of a corporate party concerning matters within the scope of their employment without the consent of opposing counsel. (Formal Opinion 82-7 (1982)). Based on FedR.Evid. 801(d)(2)(D), the Committee recognized an exception to the hearsay rule for “a statement by [the party’s] agent or servant concerning a matter within the scope of his agency or employment, made during the existence of the relationship.” The Opinion further stated that because the corporation would be bound by such admissions under Rule 801(d)(2)(D), "it seems quite in-line with the consequences to the corporation to include [the employee] within the group to be covered by the prohibitions of DR 7-104(A)(1).” In essence, the Committee’s broad reading of the Rule interpreted “pariy” as encompassing any employee or agent of a corporate party whenever the employee or agent’s statements could be admissible in evidence against the corporation under Fed.R.Evid. 801(d)(2)(D).

 This court cannot help but note that the firm of Messing and Rudavsky, LLP, has been involved in two previous disciplinary matters arising out of its ex parte contact with an opposing parties employees in which the courts explicitly acknowledged the uncertainty of the rule’s scope. See Bruce v. Silber, 1989 WL 206452 (D.Mass. 1989); Hurley v. Modern Continental Construction Co., 1999 WL 95723 (D.Mass. 1999). This uncertainty alone, should have prompted M&R to seek judicial authorization prior to making ex parte contact.