MEMORANDUM AND ORDER ON MOTION IN LIMINE
JANE W. FREEMAN, Associate Judge.
The Plaintiff has brought this action seeking reinstatement of his employment with the Mohegan Tribe and other relief. He alleges that the termination of his employment was in violation of the Mohegan Tribal Discriminatory Employment Practices Ordinance, M.T.0.2002-04, and provisions of the Mohegan Tribe’s Policies and Procedures Manual; that the procedures used to terminate his employment denied him due process; and that he has been slandered by being terminated for sexual harassment.
The Plaintiff has filed a Motion In Li-mine in which he seeks an order from this Court determining whether the Plaintiffs counsel may speak with: (1) non-managerial employees of the Defendant; (2) tribal members who are non-managerial employees of the Defendant; (3) tribal members who are not employed in any capacity by the Defendant. The Plaintiff has not provided the names of the persons with whom he wishes to speak, nor their positions if they are currently employed by the Mohegan Tribe. The Defendant has filed an Objection to Motion In Limine and argues that the motion should be denied because: (1) the Mohegan Tribal Court Rules of Practice and Procedure do not provide for a motion in limine; (2) a motion in limine is inappropriate for the relief sought by the Plaintiff; (3) the ex parte communications the Plaintiff seeks are barred by the Connecticut Rules of Professional Conduct.
I. THE LACK OF A COURT RULE ON MOTIONS IN LIMINE DOES NOT PRECLUDE COURT ACTION ON SUCH MOTIONS
The Defendant contends that this Court must deny the Motion In Limine because the Mohegan Tribal Court Rules of Practice and Procedure (“the Rules”) do not provide for such motion. While the Rules do not provide for motions in limine, other courts have considered the merits of a motion in limine even in the absence of a rule. Mulrooney v, Wambolt, 215 Conn. 211, 212, 575 A.2d 996 (1990) (Connecticut Supreme Court considered the merits of a ruling on a motion in limine prior to the 1996 adoption of Connecticut Practice Book § 15-3, adding motions in limine to the Connecticut civil rules). One authority has noted that under Connecticut’s rules *265 “[t]here is no requirement that a particular motion be expressly authorized in the Practice Book. Any motion which serves a legitimate purpose, is timely filed and is in proper format should not be rejected on the ground that there is no rule on the subject.” W. Horton & K. Knox, 1 Connecticut Practice Series: Practice Book Annotated, (2004 Ed.) § 11-1, author’s comments, p. 496.
Similarly, there is no requirement that a particular motion be expressly authorized by the Rules in order for it to be considered by this Court. This Court, like other courts, has the inherent power to control proceedings before it so long as such proceedings do not conflict with a rule of court or a statute (tribal ordinance). “The power of a court to manage its own affairs so as to achieve an orderly and expeditious disposition of cases exists independently of the power recognized by rule or statute.” Talit v. Northwest Airlines, 58 Conn.App. 102, 107, 752 A.2d 1131 (2000). Therefore, the absence of any provisions regarding motions in limine in the Rules does not preclude this Court from acting on such a motion filed in this Court. As hereafter set forth, the Court will not be treating this motion as a motion in limine; however, for future guidance of the parties herein, the Court nevertheless rejects the Defendant’s contention that this motion in limine must be denied because it is not provided for in the Rules.
II. WHILE A MOTION IN LIMINE MAY NOT BE THE PROPER MOTION TO SECURE THE RELIEF SOUGHT BY THE PLAINTIFF, THE COURT WILL TREAT THE PLAINTIFF’S MOTION AS A MOTION FOR AN ORDER CONCERNING ACCESS TO WITNESSES
Motions in limine have long been employed in civil and criminal proceedings to obtain (1) rulings in advance of trial on the admissibility of evidence and (2) orders prohibiting opposing counsel, their clients and their witnesses from displaying, offering or making reference to specified prejudicial evidence in a jury’s presence. Tail’s Handbook of Connecticut Evidence, § 1.34.1, 3rd Ed., 2001. The Plaintiff is not seeking either type of order or ruling but instead is seeking a court order determining whether he may interview certain employees of the Defendant and certain tribal members (none of which are identified by name). The Mohegan Tribal Court has not yet adopted Rules of Professional Conduct for attorneys. Thus the Plaintiffs counsel essentially seeks prior Court authorization for such interviews to assure that he does not engage in conduct which this Court might consider a violation of ethical precepts prohibiting a lawyer from contacting a “party” represented by counsel, concerning the matter in representation. The Plaintiff and Defendant have both referred to Rule 4.2 of the Connecticut Rules of Professional Conduct. That rule is not specifically applicable to professional conduct of attorneys in this Court. However, until this Court adopts its own rales of Professional Conduct, there is nothing which prevents it from looking to the rules in other jurisdictions, and the cases arising under such rules, for guidance.
The purpose of court rales which prohibit communications between a lawyer for one party concerning the matter in representation, with a party he knows to be represented by a lawyer in the matter without that lawyer’s consent, is to “preserve the integrity of the lawyer-client relationship by protecting the represented party from the superior knowledge and skill of the opposing lawyer.” Pinsky v. Statewide Grievance Committee, 216 Conn. 228, 236, 578 A.2d 1075 (1990).
*266 The Plaintiff in the case of Morrison v. Brandeis University, 125 F.R.D. 14 (D.Mass.1989), like the Plaintiff in this case, requested court authorization to interview certain non-party employees of the Defendant without prior notice to or the consent of the Defendant’s counsel. The Defendant objected to the proposed interviews of high level faculty employees, arguing that such employees were the equivalent of “managerial employees”. The Defendant claimed that the state bar association had broadly interpreted the term “party” in the ABA Code of Profess. Resp., DR 7—104(A)(1), prohibiting communications with a represented “party”; the state bar’s interpretation, when a “party” was a corporation, required that the term “party” be construed to encompass any employee or agent of a corporate party whose statements would be admissible at trial. The Court noted that many jurisdictions had adopted this “control-group test”, drawing a distinction between members of the “control-group” on one the hand and mere employees on the other, holding that that the former are “parties” as that term is used in DR 7-104(A)(1) and the latter are not. Id. at 16. Noting the problems with this test, the Court also considered the “managing-speaking test” adopted in other jurisdictions (under which only those who have authority to speak for a corporation may bind it) and the test under the new Rule 4.2 of the ABA’s model rules of Professional Conduct (which in addition to barring communications with persons haring managerial responsibility also barred communications with persons whose statements may constitute an admission on the part of the organization); the Court then concluded that none of the three tests succeeded in striking a balance which accommodated the competing needs of the parties in each case. Id, at 17-18. Instead, the Court opted for a case-by-case balancing test holding that “[a] plaintiff’s need to gather information on an informal basis on the one hand and the defendant’s need for effective representation on the other can, in most cases, only be balanced with reference to the facts and circumstances which appertain to the particular case at hand.” Id. at 18.
While the Plaintiff in the case at bar does not specifically state the nature of the information he hopes to secure from the proposed interviews, it is fair to assume that Plaintiffs counsel desires to interview and prepare potential fact witnesses for either depositions and/or trial testimony concerning the circumstances surrounding Plaintiffs termination of employment and/or the procedures used in connection with such termination. In Morrison v. Brandeis University, supra, the court noted two important functions that counsel played in litigation which would be precluded, if the requested authorizations to conduct the interviews were not granted. The court held that the needs of the plaintiff and the search for the truth and effective trial preparation, outweighed defendant’s concerns about its own “effective representation of counsel”, and authorized the plaintiff to conduct the faculty interviews requested, under specified guidelines.[1]
Unless authorization is granted, two important functions which counsel traditionally play in litigation would be precluded. The first is the function of interviewing witnesses without the presence of opposing counsel in order to gain information ... The second is *267 the function of preparing witnesses favorable to a client before testimony at a deposition or at trial without the presence of opposing counsel. In short, without authorization, plaintiffs counsel’s ability to prepare her case in the traditional manner is substantially circumscribed ... In sum, it is my opinion that in the circumstances of this case, the needs of the plaintiff and those interests which serve the search for truth and the effective preparation for trial outweigh any need which counsel for Brandéis has to be present at the interviews in order to afford Bran-déis “effective representation” by counsel ...
Id. at 19.
The presence of opposing counsel at the interviews requested by the Plaintiff in the instant case may well inhibit the free and open discussion which an attorney desires at such interviews. In addition, use of the formal discovery process for a large number of potential fact witnesses, before preliminary interviews are conducted to limit and determine which witnesses are likely to provide favorable trial testimony for the Plaintiff, may well be a substantial financial burden on the Plaintiff. Subject to the Defendant’s showing that any persons proposed to be interviewed are part of Defendant’s litigation team, have been involved in trial strategy or otherwise have information protected by the attorney client privilege (after their names are provided as hereafter ordered), the Court finds that the Plaintiffs substantial need to interview possible fact witnesses as set forth in his motion outweighs any countervailing concerns the Defendant may have concerning effective representation of its client, by reason of the proposed interviews.
The only troubling aspect of the Plaintiffs request for interviews is that Plaintiffs counsel has failed to provide a list containing the names of the persons he seeks to interview. Without such a list, the Defendant would be deprived of the opportunity to seek a protective order, as to any persons named who have been involved in developing or have been made privy to information concerning trial strategy, or otherwise have information concerning the case which is subject to the attorney-client privilege.
Therefore, IT IS HEREBY ORDERED that:
1. On or before September 15, 2004, the Plaintiff shall file with the Court, with a copy to all counsel, a list containing the names of all persons the Plaintiff seeks to interview, as described in his motion, together with the following information about each person, if known: the person’s address, telephone number and other contact information; whether the person is a current or former employee of the Mohegan Tribe, the Mohegan Tribal Gaming Authority or any other Mohegan tribal entity and if so, which entity; the current or former position/job title of the person; W'hether the person is a member of the Mohegan Tribe;
2. If the Defendant objects to the interview of any person(s) on the Plaintiffs list for any one of the following reasons, the Defendant may file a motion for protective order, with supporting memo of law, within fourteen (14) days after the filing of the Plaintiffs list: (a) the per-sonas) named has been involved in developing or has been made privy to information concerning trial strategy; or (b) the persons) named has information concerning the case which is subject to the attorney-client privilege;
3. If the Defendant files a motion for protective order pertaining to any one or more of the persons whose names are on *268 the Plaintiffs list, for either of the reasons set forth in paragraphs 2(a) or 2(b) of this order, then the Plaintiff shall not interview any of the persons on Plaintiffs list until the Court rules on the Defendant’s motion for protective order;
4. If the Defendant does not file a motion for protective order then the Plaintiff is authorized to interview those persons whose names are on the list prepared pursuant to paragraph 1 hereof, subject to the following guidelines:[2]
(a) When the Plaintiffs counsel contacts any of the persons he has been authorized to interview, counsel shall immediately disclose, if counsel has not already done so, his capacity as counsel for the Plaintiff in this matter and the purpose of the contact, i.e. to request an interview for the purpose of trial preparation;
(b) Whether or not to grant the request for an interview is completely up to person to be interviewed, and the decision of each person shall be respected;
(c) Any request made by any person on the Plaintiffs list that the interview take place only in the presence of his personal counsel and/or the presence of Defendant’s counsel shall be honored;
(d) Defendant and Defendant’s counsel shall advise each person on the Plaintiffs list who is a current employee of the Defendant that he/she may, if he/she wishes, agree to be interviewed by the Plaintiffs counsel to discuss matters which relate to this case and that no disciplinary or other adverse action will be taken by the Defendant against such person for consenting to an interview or for anything they say during the course of an interview. Defendant and Defendant’s counsel may inform the persons named on the Plaintiffs list that they are free to refuse to consent to an interview by the Plaintiffs counsel if they wish, and, if they wish, they may consent to be interviewed only in the presence of Defendant’s counsel. Defendant and Defendant’s counsel shall, however, make it clear that these decisions are for each person to be interviewed to make and that the Defendant takes no position one way or the other on the decisions they make on these issues;
(e)All persons on Plaintiffs list who will be interviewed shall be informed by Plaintiffs counsel of the existence of this order and memorandum and offered a copy for them review.
IT IS SO ORDERED.

. A Connecticut Superior Court has also followed these guidelines in an employment discrimination case. Craine v. Trinity College, 23 Conn. L. Rptr. 238, 1998 WL 809534 (Conn.Super.).

. These guidelines are adopted from Morrison v. Brandeis University, 125 F.R.D. 14, 19 (D.Mass.1989).