**Paul MASSA, Don Webster, Cecil Stoppelberg, John Brady, Frank Senne, Richard Barkley, Clayton Gerlofs, Val Jablonski, Richard Kosty, Kenneth Sheet and Gordon Jonas, Plaintiffs,**

v.

**EATON CORPORATION, a foreign corporation, Defendant.**

**No. K85–18.**

United States District Court,
W.D. Michigan, S.D.

Dec. 5, 1985.

Vandervoort, Cooke, McFee, Christ, Carpenter & Fisher by Nelson Karre, Battle Creek, Mich., for plaintiffs.

Ross & Hardies by Michael H. King, Richard E. Lieberman, James M. Gecker, Chicago, Ill., Piatt, Bartosiewicz & Tiderington by Gary P. Bartosiewicz, Kalamazoo, Mich., for defendant.

OPINION AND ORDER

ENSLEN, District Judge.

This matter is before the Court on Defendant's objections to the Magistrate's order denying its motion for entry of a protective order. Eleven Plaintiffs jointly filed this action against Eaton Corporation alleging various claims including breach of an implied employment contract, *see Toussaint v. Blue Cross and Blue Shield of Michigan,* 408 Mich. 579, 292 N.W.2d 880

(1980), and age discrimination. One of the named Plaintiffs, Paul Massa, a former Eaton plant manager in Shelbyville, Tennessee, has conducted informal discovery without prior knowledge or consent of Defendant's counsel by interviewing several managerial level employees of the Defendant corporation regarding the subject matter of the instant litigation. The employees interviewed include Jim Gibson, Human Resources Manager at the Eaton Foundry Division Plant in Cynthiana, Kentucky, and formerly Human Resources Manager at Eaton's Transmission Division Plant in Shelbyville, Tennessee; Doris Darnell, Purchasing Manager at the Shelbyville plant; and Bob Fullerton, Foreman at the Shelbyville plant and formerly Chief Plant Accountant. It is unclear exactly how many Eaton employees, other than the three identified above, have been contacted by the Plaintiffs since the institution of this suit. It is equally unclear whether any of these contacts have been made with the prior knowledge of, or at the behest of, Plaintiffs' attorney. It is, however, conceded by Plaintiffs' counsel that he has been the beneficiary of these investigative efforts and that he does not intend to direct his clients to cease their ex parte contacts unless ordered to do so by the Court.

On September 3, 1985, Defendant filed a motion for entry of a protective order pursuant to Fed.R.Civ.P. 26(c) and for an order to show cause why Plaintiffs should not be held in contempt. The basis of Defendant's motion was that, by allowing his client(s) to conduct the informal interviews, Plaintiffs' counsel breached his ethical duties and disrupted the discovery process. The Michigan Code of Professional Responsibility, specifically Disciplinary Rule 7–104(A)(1), provides that:

(A) During the course of his representation of a client a lawyer shall not: (1) communicate or cause another to communicate on the subject of the representation with a party he knows to be represented by a lawyer in that matter unless he has the prior consent of the lawyer representing such other party or is authorized by the law to do so.

Of course, the instant dispute revolves around whether the three individuals interviewed are properly considered "parties" within the meaning of the disciplinary rule. Certainly, none of the three are named as Defendants in this case. ABA Informal Ethics Opinions 1377 (June 2, 1977) and 1410 (Feb. 14, 1978) suggest that where an employee of a corporate party can "commit" the corporation in the particular situation, that employee must be considered a "party" for the purposes of the Code. Once again, however, we are left to define the term "commit the corporation."

On September 11, 1985, a hearing on this motion was held before Magistrate Rowland. While extensive oral argument was entertained, the Magistrate was clearly hampered by the noticeable dearth of published opinions addressing this issue. Magistrate Rowland decided that the three individuals interviewed did not possess sufficient authority to commit the corporation for the purposes of the litigation, and therefore ex parte interviews with those individuals were not prohibited by DR 7–104(A)(1). Transcript of Hearing at 30–32, *Massa*. This decision may not be overturned unless it is clearly erroneous or contrary to law. 28 U.S.C. § 636(b)(1)(A); Fed.R.Civ.P. 72(a).

It appears that in determining which corporate employees have the authority to commit the corporation, the Magistrate applied the "control group" test. In a nutshell, that test provides that only directors, officers and managing agents of a corporation have the authority to speak for, and bind, the corporation in law suits. Certainly some support for this proposition can be found in the legal literature. *See, e.g.*, *Shealy v. Laidlaw Brothers*, 34 F.E.P. Cases 1223 (D.S.C.1984); H. Drinker, *Legal Ethics* 201 (1953). However, it is my opinion that this is an unduly restrictive interpretation of the disciplinary rule, at least to the extent that it allows middle or upper level management personnel of a corporate party to be interviewed ex parte by an adversary in the hopes that admissions,

binding on the corporate employer under Fed.R.Evid. 801(d)(2)(D), might be elicited. The new Rule 4.2 of the ABA's Model Rules of Professional Conduct, the successor to DR 7–104(A)(1), was explicitly intended to prohibit such communications. The official comment to Rule 4.2 states that:

> In the case of an organization, this Rule prohibits communications by a lawyer for one party concerning the matter in representation with persons having managerial responsibility on behalf of the organization, and with any other person whose act or omission in connection with that matter may be inputed to the organization for purposes of civil or criminal liability or whose statement may constitute an admission on the part of the organization.

While the new Model Rules have not yet been adopted in Michigan, I am not persuaded that Michigan's application of DR 7–104 would allow the conduct of Plaintiffs and their counsel in this case. On June 18, 1980, the State Bar's Committee on Professional and Judicial Ethics issued Informal Opinion 535, interpreting DR 7–104(A)(1). The conclusion of the Committee was that "it is not improper for an attorney representing a plaintiff in an age discrimination case against a corporate employer to discuss the case with *non-management* employees not parties to the litigation and not represented by an attorney...." (Emphasis added). Furthermore, at least two other local Bar Associations have recently given the ex parte restrictions of DR 7–104(A)(1) an expanded construction that would prohibit communications such as those that occurred in the instant case. *See* San Diego Bar Association Ethics Committee Opinion 1984–5 (Nov. 5, 1984), *reprinted in* ABA/BNA Lawyer's Manual of Professional Conduct, Current Reports Vol. 1, No. 24, at 555; Los Angeles County Bar Association Formal Opinion 410 (Mar. 24, 1983), *reprinted in* ABA/BNA Lawyers' Manual of Professional Conduct.

The impetus for the recent rethinking of the scope of DR 7–104(A)(1)'s prohibitions was most certainly the Supreme Court's opinion in *Upjohn Co. v. United States*, 449 U.S. 383, 101 S.Ct. 677, 66 L.Ed.2d 584 (1981). While *Upjohn* did not concern ethical canons or disciplinary rules, it did reject the "control group" test as it applies to corporate parties in the context of the attorney-client privilege. In that respect, the Court stated that:

> [m]iddle-level—and indeed lower-level—employees can, by actions within the scope of their employment, embroil the corporation in serious legal difficulties, and it is only natural that these employees would have the relevant information needed by corporate counsel if he is adequately to advise the client with respect to such actual or potential difficulties.

*Id.* at 391, 101 S.Ct. at 683. Therefore, the Court concluded that communications between corporate counsel and employees of the corporation for the purpose of determining the potential civil or criminal liability of the corporation were subject to the protection of the attorney-client privilege. *Id.* at 395, 101 S.Ct. at 685. The Court's rationale was succinctly stated as follows:

> [I]f the attorney-client privilege is to be served, the attorney and client must be able to predict with some degree of certainty whether particular discussions will be protected. An uncertain privilege, or one which purports to be certain but results in widely varying applications by the courts, is little better than no privilege at all.

*Id.* at 393, 101 S.Ct. at 684.

The logic of *Upjohn* is easily carried over to DR 7–104 and the instant fact situation. The information gained by Plaintiff from his conversations with his old acquaintances, themselves managerial employees of the Defendant corporation, could be very damaging indeed to Eaton. The allegations made in this case deal directly with the managerial structure and personnel policies of the Defendant corporation. Who better to contact concerning these policies than current plant managers, especially a Human Resources (i.e., Personnel) Manager? It seems that these are precise-

ly the types of corporate employees that would be covered by the ex parte prohibitions of DR 7–104(A)(1). Moreover, for the sake of certainty and predictability, I would extend the application of this disciplinary rule to communications with any managerial level employee of a corporate party. This interpretation is not in conflict with Informal Opinion 535, *supra.* It is also consistent with the clear trend in the wake of *Upjohn.* Accordingly, I find that the Magistrate's denial of Defendant's motion for a protective order was clearly erroneous and contrary to law and, for that reason, must be REVERSED.

THEREFORE, IT IS HEREBY ORDERED that Plaintiffs and/or their counsel immediately cease and desist from instigating, or participating in, further ex parte communications with managerial level employees of the Defendant corporation concerning the subject matter of this case.

IT IS FURTHER ORDERED that Plaintiffs submit to the Defendant, within ten (10) days of receipt of this order, the names of *all* employees of the Defendant corporation that Plaintiffs have thus far communicated with concerning the subject matter of this case.

IT IS FURTHER ORDERED that Plaintiffs submit to the Defendant, within twenty (20) days of receipt of this order, a detailed summary of the date, place and subject matter of all communications with managerial level employees of the Defendant corporation.

IT IS FURTHER ORDERED that any evidence obtained through ex parte communications with managerial level employees of the Defendant corporation will not be admissible at trial.