James Melvin CHANCELLOR, Plaintiff,

v.

The BOEING COMPANY, et al., Defendant.

No. 85–6131.

United States District Court, D. Kansas.

Feb. 3, 1988.

Fred W. Phelps, Phelps–Chartered, Topeka, Kan., for plaintiff.

Gloria G. Flentje, Foulston, Siefkin, Powers & Eberhardt, Wichita, Kan., for defendant.

## MEMORANDUM AND ORDER

CROW, District Judge.

The case comes before the court on plaintiff's motion for an order permitting ex parte interviews of certain witnesses before trial and on defendants' countermotion for a protective order pursuant to Fed.R. Civ.P. 26(c) restricting this ex parte contact. Plaintiff has listed those witnesses, current employees of defendant, which his counsel wishes to interview ex parte on certain disclosed areas. Three of the witnesses are past supervisors of plaintiff, but they have never been employed as management at Wichita. One of the witnesses was a former supervisor but was demoted in September, 1982, before this action was filed. Apparently, all of the other witnesses were promoted into supervision rather than plaintiff, but some of them have since been removed from supervision. Defendants' position is grounded on DR7–104(A)(1) as adopted by this court in D.Kan. Rule 407 and as interpreted by the various courts.

DR 7–104(A)(1) provides:

During the course of his representation of a client a lawyer shall not:

(1) communicate or cause another to communicate on the subject of the representation *with a party* he knows to be represented by a lawyer in that matter unless he has the prior consent of the lawyer representing such other party or is authorized by law to do so. (Emphasis supplied.)

*In those cases where the parties are individuals, this rule is easily enforced.* When the named party is a corporation or governmental agency, the courts have struggled with the concept and scope of "party" in DR 7–104(A)(1). The plaintiffs aptly refer to a decision of this judge, while sitting as a magistrate, holding that "party" means "control group" as defined in the context of the attorney-client relationship existing between corporate counsel and corporate employees. *Maxwell v. Southwestern Bell Telephone Company, et al.,* No. 80–4239 (D.Kan. Oct. 28, 1980). Since that decision, the Supreme Court has rejected the "control group" test preferring a case-by-case determination of when an attorney-client privilege exists for any employee of the corporation. *Upjohn Co. v. United States,* 449 U.S. 383, 395–397, 101 S.Ct. 677, 685–86, 66 L.Ed.2d 584 (1981). The Supreme Court observed:

[I]n the corporate context, however, it will frequently be employees beyond the control group as defined by the court below—"officers and agents ... responsible for directing [the company's] actions in response to legal advice"—who will possess the information needed by the corporation's lawyers. Middle-level—and indeed lower-level—employees can, by actions within the scope of their employment, embroil the corporation in serious legal difficulties, and it is only natural that these employees would have the relevant information needed by corporate counsel if he is adequately to advise the client with respect to such actual or potential difficulties.

449 U.S. at 391, 101 S.Ct. at 683. The fear of corporations' achieving a cloak of silence over its affairs was allayed by the further observation that the privilege only protects the disclosure of communications rather than the disclosure of the underlying facts. 449 U.S. at 395, 101 S.Ct. at 685. Based upon the *Upjohn* decision, the court be-

lieves the "control group" test is a disfavored legal concept that is no longer appropriate as a definition of "party" in DR 7–104(A)(1).

The historical purposes of DR 7–104(A)(1) include "preserving the proper functioning of the legal system and shielding the adverse party from improper approaches." *Wright by Wright v. Group Health Hosp.*, 103 Wash.2d 192, 691 P.2d 564, 567 (1984), *citing* ABA Comm. on Professional Ethics and Grievances, Formal op. 108 (1934). The rule's primary aim is to prevent a represented party from being taken advantage of by opposing counsel upon the presumption that the party's attorney neutralizes the contact. *Wright*, 691 P.2d at 567.

Defendants' position is that all corporate employees with past or present managerial responsibilities are parties under DR 7–104(A)(1). Plaintiff suggests that only the "named defendants or those employees of defendant with truly significant managerial responsibility with regard to the promotion denials at issue herein" should be considered parties.

A policy conflict does arise from a corporation's use of DR 7–104(A)(1) to impede an opposing counsel from interviewing ex parte its employees. The opposing counsel obviously considers certain information held exclusively by the corporation to be necessary to the case but not warranting the expense nor within the practicality of formal discovery. *Wright*, 691 P.2d at 568. *See Mompoint v. Lotus Development Corp.*, 110 F.R.D. 414, 417–18 (D.Mass. 1986). Another court has noted that this interest becomes more significant in employment discrimination cases where formal discovery of a large number of potential witnesses "may well frustrate the right of an individual plaintiff with limited resources to a fair trial and deter other litigants from pursuing their legal remedies." *Frey v. Department of Health and Human Services*, 106 F.R.D. 32, 36 (E.D.N.Y. 1985), *citing* Leubsdorf, *Communication with Another Lawyer's Client: The Lawyer's Veto and the Client's Interest*, 127 U.Pa.L.Rev. 683 (1979). The competing interest is the corporation's need and desire to protect itself for the already stated reasons behind the rule. In addition, the statements of current employees may be binding admissions upon the corporation if made "concerning a matter within the scope of his agency or employment, ... during the existence of the relationship...." Fed.R.Evid. 801(d)(2)(D). *See also Mompoint*, 110 F.R.D. at 415–16; *Massa v. Eaton Corp.*, 109 F.R.D. 312, 313–14 (W.D.Mich.1985).

In an effort to balance these competing interests, courts have grappled with the question of which corporate employees should be considered "parties." One of the more comprehensive discussions of this question is found in the *Wright* decision. 691 P.2d at 568–69. After explaining the various positions taken by courts, bar associations and state ethics commissions, the Washington Supreme Court held:

> We hold the best interpretation of "party" in litigation involving corporations is only those employees who have the legal authority to "bind" the corporation in a legal evidentiary sense, *i.e.*, those employees who have "speaking authority" for the corporation.

691 P.2d at 569. Other courts have adopted similar interpretations of party, relying on the scope of Fed.R.Evid. 801(d)(2)(D). In *Amerin Plastics, Inc. v. Maryland Cup Corp.*, 116 F.R.D. 36, 39–40 (D. Mass. 1987), the court used the following explanation of party found in the comment to Rule 4.2 of the ABA Rules of Professional Responsibility, noting it did not differ significantly from DR 7–104(A)(1):

> persons having a managerial responsibility on behalf of the organization, and with any other person whose act or omission in connection with that matter may be imputed to the organization for the purposes of civil or criminal liability or whose statement may constitute an admission on the part of the organization. (Emphasis deleted.)

The United States District Courts in Montana and Michigan also have adopted the comment to Rule 4.2. *Porter v. Arco Met-*

*als, Div. of Atlantic Richfield,* 642 F.Supp. 1116, 1117–18 (D.Mont.1986), *Massa v. Eaton Corp.,* 109 F.R.D. 312, 314 (W.D.Mich. 1985). The official comment to Rule 4.2 essentially outlines those typical circumstances when an employee would have "the legal authority to 'bind' the corporation in a legal evidentiary sense." Termed the "managing-speaking" agent test, it was found by the Washington Supreme Court to be consistent with (1) the American Bar Association's most recent approach on the issue as stated in Lawyers' Manual on Professional Conduct (ABA/BNA) 71:314 (1984); (2) the protective purpose of the rule; (3) the flexible policy of keeping the testimony of employee witnesses accessible to both parties. 691 P.2d at 569; *see also Frey,* 106 F.R.D at 35. Persuaded by the rationale behind the managing-speaking agent test, the court herein adopts it and the official comment to ABA Model Rule 4.2, as the definition of "party" under DR 7–104(A)(1).

■ One court has observed that the reason the courts have reconsidered the scope of the prohibitions in DR 7–104(A)(1) is the *Upjohn* decision. *Massa,* 109 F.R.D. at 314. Rejecting the rigid "control group" test as inconsistent, unpredictable and not adaptable, the Supreme Court recognized the possibility where circumstances would support an attorney-client relationship between corporate counsel and employees outside the control group. 449 U.S. at 391–93, 101 S.Ct. at 683–84. To define "party" as only the control group of a corporation results in the same problems noted in *Upjohn.* The "managing-speaking" test is also a case-by-case determination based on predictable and consistent factors. A corporate employee is a "party" under DR 7–104(A)(1) if he or she has managerial responsibility, his or her acts or omissions in connection with this matter may be imputed to the corporation for purposes of civil or criminal liability, or his or her statements may be an admission on part of the organization.

■ Courts have also struggled with the issue of whether former corporate employees may be parties. In *Wright,* the court concluded that DR 7–104(A)(1) did not cover former employees as they could not possible speak or bind the corporation. 691 P.2d at 569. When a former employee's acts or omissions in connection with the matter in representation may be imputed to the corporation, then he or she may be a "party." *Amarin Plastics,* 116 F.R.D. at 40. In this latter decision, the court held the former employee was not a party distinguishing its facts from a decision where the former employees' acts were the subject of the litigation, *Sperber v. Washington Heights–West Harlem–Inwood Mental Health Council, Inc.,* No. 82 Civ. 7428, slip op. (S.D.N.Y. Nov. 21, 1983), *vacated and withdrawn,* and another decision where the former employee maintained a contract with the corporation to assist in the litigation. *American Protection Insurance Co. v. MGM Grant Hotel–Las Vegas, Inc.,* Nos. 83–2674, 83–2728 (9th Cir. Dec. 3, 1984), *withdrawn. Amarin Plastics,* 116 F.R.D. at 40.

■ As these ex parte interviews are not a method of discovery encompassed within Fed.R.Civ.P. 26(c), the court's authority to enter a protective order stems from its inherent power to prohibit or remedy litigation practices which may raise or constitute ethical violations. *Amarin Plastics,* 116 F.R.D. at 38–39.

■ Applying the previously stated rules to the facts of this case, the court prohibits ex parte interviews by plaintiff's counsel of the following employees having managerial responsibility: Aaron D. Forrest, Verne J. Vandermoon, Kent Simonsen, Lynne Rainey, Mike Day, Harold Peterson, and Harrison Williams. The court further prohibits ex parte interviews by plaintiff's counsel of any of the remaining named employees who may have been involved in the denial of promotions at issue in any way that their actions as agents may be imputed to defendant corporation for purposes of civil liability. The court is without sufficient facts to ascertain which of the remaining named witnesses fall within this latter category. The court hereby enters a protective order on the above stated terms. Plaintiff's counsel may conduct any ex parte

interviews of defendants' employees which do not violate the terms of this protective order and the rules stated herein.

As to defendants' request for plaintiff's disclosure of those names of defendant's employees already contacted, production of notes or statements obtained from those contacts and suppression of any evidence obtained thereby, the court will not permit the introduction of any such statements, pursuant to Fed.R.Evid. 801(d)(2)(D), of those employees of the corporation who are within the manager-speaking agent test discussed above.

IT IS SO ORDERED.