Filed 6/1/21  Salgado v. Carrows Restaurants CA2/6

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SIX

|  |  |
|---|---|
| MAUREEN SALGADO, Plaintiff and Respondent, v. CARROWS RESTAURANTS, INC., et al., Defendants and Appellants. | 2d Civ. B304799 (Super. Ct. No. 56-2016-00489342-CU-WT-VTA) (Ventura County) |

Defendants Carrows Restaurants, Inc. and Catalina Restaurant Group, Inc. (sometimes collectively "Carrows") appeal an order of the superior court that found an arbitration agreement signed by plaintiff Maureen Salgado is not enforceable.  The court found procedural and significant unconscionability in the arbitration agreement.  We affirm.

FACTS

Salgado began working at Carrows Restaurant in 1984.  On November 22, 2016, she filed a lawsuit in the Ventura County Superior Court alleging employment discrimination and violation

of civil rights against Food Management Partners, doing business as Carrows Restaurant.

On April 18, 2017, Salgado amended her complaint to add Carrows Restaurants, Inc. and Catalina Restaurant Group, Inc. as defendants.

On September 5, 2017, Carrows filed a motion to compel arbitration. The arbitration agreement attached to the motion indicated that Salgado signed the agreement on December 7, 2016.

Salgado opposed the motion on the ground that her lawsuit was filed before she signed the arbitration agreement. She claimed the agreement could not be applied retroactively and it was procedurally and substantively unconscionable.

Carrows claimed that it did not know of the existence of Salgado's lawsuit when the arbitration agreement was signed and that Salgado voluntarily signed it.

The trial court denied the motion. It did not rule on the unconscionability issue. The court said, "Defendants have failed to demonstrate that the arbitration agreement applies to a suit that was filed prior to its signature."

Carrows appealed and we reversed. We held that an arbitration agreement could apply to a lawsuit that was pending prior to the signing of the arbitration agreement. (*Salgado v. Carrows Restaurants, Inc.* (2019) 33 Cal.App.5th 356, 361-362.)

We also noted that Salgado's attorney filed a declaration in the trial court stating that "he was representing Salgado in this lawsuit." He said, "It had been filed and served on Carrows's 'restaurant manager' before the arbitration agreement was signed. He did not have a chance to consult with Salgado before she signed it, and he did not know she had signed it until " 'late

2

Spring 2017.' " (*Salgado v. Carrows Restaurants, Inc.*, *supra*, 33 Cal.App.5th at p. 363.)  We said, "Whether these or other facts support a claim that the arbitration agreement is unenforceable shall be decided by the trial court.  (*Ibid*.)

On remand, the parties filed additional declarations.  In her declaration, Salgado said, "[P]rior to December 7, 2016, my manager, Alonzo Martin, informed me that he was aware of the lawsuit I had filed against Carrows and that it had no merit." "On December 7, 2016, my manager Alonzo Martin, confronted me while at work, and gave me a multi-page document with what I perceived to be small type of font.  At the time I was presented with this document, it was nearing the end of my shift, and was told by Mr. Martin that I needed to sign it before I went home.  At that time, Mr. Martin did not tell me what it concerned nor anything about it, except that *I had to sign it before I went home or not bother returning to work. . . .*  At no such time did Defendants ever provide me with the opportunity to read, review or discuss the 'document' with anyone.  *I feared my job was in jeopardy, thus signed it without knowing what I was signing in effort to save my job."*  (Italics added.)

Salgado declared that she "had no way of knowing" that the arbitration agreement "required that [she] remit this current lawsuit into arbitration in the San Diego area and that [she] would have to foot half the fees/costs for such, which [she] simply cannot afford. . . . [¶]  [She has] lived most of [her] life in Ventura County and [has] zero ties to [the] San Diego area."

Carrows submitted a declaration of Peter Donbavand who declared, "Defendants did not know of the lawsuit when [Salgado] signed the Arbitration Agreement. [¶] . . . Defendants first learned of the lawsuit in January 2017 . . . . [¶] . . . The

3

Arbitration Agreement was part of a company-wide program to roll out an updated Team Member Handbook, which had been months in the making."

The trial court found Salgado's declaration was "credible." It ruled the arbitration agreement "is not enforceable." "The procedural unconscionability associated with the arbitration agreement is considerable. The substantive unconscionability associated with the arbitration agreement is also significant."

The trial court said: 1) a venue provision in the agreement requiring the arbitration to take place in San Diego was "decidedly one-sided"; 2) Carrows "knew or should have known that [Salgado] was represented by counsel and her lawsuit was still pending when the Carrows' manager specifically named in her lawsuit made her sign the arbitration agreement"; 3) "having been put on notice that [Salgado] was represented by counsel regarding a pending lawsuit, it is unconscionable to circumvent said counsel, and without said counsel's knowledge, extract a waiver of [Salgado's] right to litigate that dispute in court"; and 4) "[c]onditioning [Salgado's] continued employment on the signing of a pre-printed Arbitration Agreement is sufficient enough to establish that the Arbitration Agreement is a contract of adhesion, because it indicates that [Salgado] had no meaningful opportunity to negotiate the terms . . . and was not given a meaningful choice as to whether to sign the Agreement."

4

## DISCUSSION

### *Is the Arbitration Agreement Enforceable?*

Carrows contends the trial court erred in denying the motion to compel arbitration because a venue clause in the arbitration agreement was a "mutual venue provision" and the agreement was not substantively unconscionable.

"Courts may refuse to enforce unconscionable contracts and this doctrine applies to arbitration agreements." (*Salgado v. Carrows Restaurants, Inc.*, *supra*, 33 Cal.App.5th at p. 362.) " ' "Unconscionability has procedural and substantive aspects. [Citation.] 'Both procedural and substantive unconscionability must be present before a court can refuse to enforce an arbitration provision based on unconscionability . . . .' " ' " (*Ibid.*) "Substantive unconscionability relates to the fairness of the agreement's terms. Procedural unconscionability involves the ' "circumstances of contract negotiation and formation." ' " (*Ibid.*)

Courts use a sliding scale. "In other words, the more substantively oppressive the contract term, the less evidence of procedural unconscionability is required to come to the conclusion that the term is unenforceable, and vice versa." (*Armendariz v. Foundation Health Psychcare Services, Inc.* (2000) 24 Cal.4th 83, 114.) "In addition, 'the petition to compel arbitration is not to be granted when there are grounds for rescinding the agreement.' " (*Salgado v. Carrows Restaurants, Inc.*, *supra*, 33 Cal.App.5th at p. 362.)

### *The Venue Provision*

The venue provision of the agreement provides, "All claims brought under this agreement shall be held in San Diego, California . . . ." An agreement may be substantively unconscionable where its terms are "overly harsh" or "one-sided."

(*Armendariz v. Foundation Health Psychcare Services, Inc.*, *supra*, 24 Cal.4th at p. 114.) " 'Unconscionability is ultimately a question of law for the court.' " (*Gutierrez v. Autowest, Inc.* (2003) 114 Cal.App.4th 77, 89.) "However, numerous factual issues may bear on that question." (*Ibid.*)

Carrows contends this venue provision is not one-sided because it applies equally to the employer and employee.

But Carrows's attorneys have their office in San Diego. This venue favors Carrows. Salgado lives in Ventura County. Her counsel has an office in Ventura. The Carrows restaurant at issue in this case is in Ventura. Salgado declared that she had "zero ties to [the] San Diego area." She claimed financial hardship for litigating in San Diego. Before the arbitration agreement, Salgado had already filed this action in the Ventura County Superior Court. In her declaration, she said, "I was never given [the] opportunity to read [the agreement]. I had no way of knowing that it required *that I remit this current lawsuit into arbitration in the San Diego area* and that I would have to foot half the fees/costs for such, which I simply cannot afford."

A court may find a selected venue for arbitration that is favorable only for one side is " 'less as a forum for neutral dispute resolution and more as a means of maximizing [the stronger party's] advantage.' " (*Magno v. The College Network, Inc.* (2016) 1 Cal.App.5th 277, 289.) A relevant factor is whether a provision results in limiting a party's ability to participate in the arbitration process. (*Gutierrez v. Autowest, Inc.*, *supra*, 114 Cal.App.4th at p. 90.) Or whether it would require an expenditure of funds that the weaker party would not have the ability to pay. (*Id.* at pp. 90-91.) A provision may appear facially mutual yet be substantively unconscionable in practical

6

application by giving one party a one-sided advantage to maximize its position over the other. (*Little v. Auto Stiegler, Inc.* (2003) 29 Cal.4th 1064, 1073.)

The trial court found, "The requiring of all claims to be made in San Diego is *decidedly one-sided.* [Salgado] and her counsel are required to expend their time and resources to litigate the matter in a *County which does not have any clear connection to the dispute* other than the fact that [Carrows's] attorneys [appear] to have their office there." (Italics added.) Salgado "has worked most of her adult life for Defendant's restaurants in Ventura County. [Salgado], *an elderly woman* who works for *minimum wage and tips*, would be compelled to travel to San Diego to arbitrate this matter." (Italics added.) The trial court could reasonably find this provision denied Salgado reasonable access to litigate her claims and provided an unfair advantage for Carrows.

Moreover, "California favors contractual forum selection clauses *so long as they are entered into freely and voluntarily . . . .*" (*America Online, Inc. v. Superior Court* (2001) 90 Cal.App.4th 1, 11, italics added.) The trial court's findings show this provision was not "entered into freely and voluntarily." It was also not an ordinary venue provision. The court's findings show it was a device to override Salgado's and her counsel's choice to litigate in Ventura County, achieved without the knowledge or consent of Salgado's attorney.

Carrows contends the trial court erred because if the venue provision was invalid, the court was required to sever it from the agreement, and it could not invalidate the entire arbitration agreement. "[C]ourts may invalidate an arbitration agreement if it contains provisions that are unconscionable or contrary to

7

public policy." (*Baxter v. Genworth North America Corp.* (2017) 16 Cal.App.5th 713, 721.) They may sever an invalid provision to save an otherwise valid agreement.

But a decision whether to sever is a matter within the trial court's sound discretion. (*Magno v. The College Network, Inc.*, *supra*, 1 Cal.App.5th at p. 292.) Courts will not sever a provision to save the agreement where the bad provision "permeates the whole contract" or where the underling purpose of the agreement is unlawful. (*Abramson v. Juniper Networks, Inc.* (2004) 115 Cal.App.4th 638, 659.) Severance is not required where the "interests of justice" would not be furthered by severance. (*Carbajal v. CWPSC, Inc.* (2016) 245 Cal.App.4th 227, 254.) Nor is it required where it would result in the court having to condone improper conduct of the drafter of the agreement that violates public policy. (*Gutierrez v. Autowest, Inc.*, *supra*, 114 Cal.App.4th at p. 93.) Or where there is no way "to remove the unconscionable taint from the agreement." (*Baxter v. Genworth North America Corp.*, *supra*, 16 Cal.App.5th at p. 738.)

Carrows contends that if the venue provision is severed, enforcement of the remainder of the arbitration agreement will not result in unequal treatment for Carrows or Salgado. We disagree.

*Other Provisions of the Agreement*

Carrows suggests that our "de novo" review of the agreement will not disclose another provision that will be enforced unequally. (*Fitz v. NCR Corp.* (2004) 118 Cal.App.4th 702, 711 [appellate court may review the agreement on de novo review].) Carrows claims the only portion of the agreement the trial court found to be invalid was the venue provision.

8

Salgado disagrees and contends the trial court's findings on unconscionability are not confined solely to the venue provision. She notes that the court also found the agreement invalidly "extract[s] a waiver" of her "right to litigate" in "a pending lawsuit." This essentially goes to the portions of the agreement that require the parties to *forfeit* their right to a trial in *pending* litigation "in a lawsuit," in "a court of law," and to "give up" rights to "trial by jury." The agreement has a single exclusion and does not apply to the right to participate in "class[] action lawsuits which may have been filed against the Company and are pending at the time this agreement is executed." But this means it applies to non-class action lawsuits, such as Salgado's, "which may *have been filed* against the Company and *are pending at the time this agreement is executed*." (Italics added.) The *enforcement* of these provisions is one-sided in favor of Carrows, because Carrows was not required to "give up" a right to a trial in "pending" litigation. Carrows did not have pending litigation against Salgado. Only Salgado had pending litigation. Carrows did not forfeit a right to a jury trial in a pending case, but Salgado was required to forfeit that right in her pending lawsuit.

Lack of mutuality may be " 'manifested as much by what the agreement does not provide as by what it does.' " (*Carmona v. Lincoln Millennium Car Wash, Inc.* (2014) 226 Cal.App.4th 74, 86.) There is substantive unfairness where the agreement requires the employee to give up actually existing rights while the employer only facially surrenders hypothetical ones. (*Armendariz v. Foundation Health Psychcare Services, Inc.*, *supra*, 24 Cal.4th at p. 114; see also *OTO, L.L.C. v. Kho* (2019) 8 Cal.5th 111, 136-137.) Here the enforcement of these provisions,

which constitutes a substantial portion of the agreement, results in detriment to Salgado, and to the exclusive benefit of Carrows.

Multiple provisions of the agreement were unconscionable, but even "a single unconscionable term could justify a refusal to enforce an arbitration agreement if it were drafted in bad faith . . . ." (*Gutierrez v. Autowest, Inc.*, *supra*, 114 Cal.App.4th at p. 93), or where other conduct of a party precludes enforcement of the agreement. (*Davis v. Blue Cross* (1979) 25 Cal.3d 418, 426-427.)

*Other Evidence of Unconscionability*

Salgado contends the trial court properly invalidated the entire arbitration agreement because it was " ' "permeated" by unconscionability.' " (*Magno v. The College Network, Inc.*, *supra*, 1 Cal.App.5th at p. 292.) Here the trial court found Carrows improperly used the agreement to undermine Salgado's existing lawsuit against Carrows.

*Interference with Salgado's Pending Lawsuit*

In *Salgado v. Carrows Restaurants, Inc.*, *supra*, 33 Cal.App.5th at page 359, we ruled the trial court originally denied Carrows's motion to compel arbitration on an invalid ground. But the court never reached the issue of whether the agreement was not enforceable because of unconscionability. We noted that Salgado's counsel filed a declaration stating: 1) he represented Salgado in this lawsuit; 2) the declaration was filed and served on Carrows's "restaurant manager" before the arbitration agreement was signed; 3) Salgado's counsel "did not have a chance to consult with Salgado before she signed [the arbitration agreement]"; and 4) her counsel did not know she had signed [the arbitration agreement] until 'late spring 2017.' " (*Id.* at p. 363.) We remanded the case to the trial court with

10

instructions to determine whether "these *or other facts* support a claim that the arbitration agreement is unenforceable." (*Ibid.*, italics added.)

After remand, Salgado filed a declaration stating: 1) her work manager "informed [her] that he was aware of the lawsuit [she] had filed against Carrows and that it had no merit"; 2) she was forced to sign the arbitration agreement before she went home; and 3) she was not aware of the impact it would have on her current lawsuit.

Carrows claims it did not know about Salgado's lawsuit. But we do not decide the credibility of witnesses. That is a matter for the trial court. (*People v. Ochoa* (1993) 6 Cal.4th 1199, 1206; *Carlson v. Home Team Pest Defense, Inc.* (2015) 239 Cal.App.4th 619, 630 [" 'If the court's order is based on a decision of fact, then we adopt a substantial evidence standard' "]; *In re Christopher R.* (2014) 225 Cal.App.4th 1210, 1216.) On a motion to compel arbitration, "the trial court sits as a *trier of fact.*" (*Engalla v. Permanente Medical Group, Inc.* (1997) 15 Cal.4th at p. 972, italics added.) " 'If there is any conflict in the affidavits, those in favor of the prevailing party must be taken as true, and the facts stated therein must be considered established.' " (*Chronometrics, Inc. v. Sysgen, Inc.* (1980) 110 Cal.App.3d 597, 603; *Fuller v. Lindenbaum* (1938) 29 Cal.App.2d 227, 230.)

Here the trial court resolved the evidentiary conflicts in favor of Salgado and her counsel. It said the way Carrows obtained Salgado's signature on the arbitration agreement was unconscionable. The court said, "[H]aving been put on notice that [Salgado] *was represented by counsel* regarding a pending lawsuit, it is *unconscionable* to *circumvent said counsel, and without said counsel's knowledge, extract a waiver of [Salgado's]*

11

*right to litigate that dispute in court.* A contrary finding would encourage employer Defendants who are served with lawsuits *to circumvent counsel and extract arbitration agreements* from employee Plaintiffs." (Italics added.)

The trial court's finding about Carrows's purpose and use of this agreement to improperly undermine Salgado's counsel and Salgado's existing lawsuit supports the court's ruling that the agreement is not enforceable. (*In re Marriage of Wickander* (1986) 187 Cal.App.3d 1364, 1367 [stipulation obtained without counsel of record's consent is improper and not enforceable]; *St. Agnes Medical Center v. PacificCare of California* (2003) 31 Cal.4th 1187, 1196 ["[T]he 'bad faith' or 'willful misconduct' of a party may constitute a waiver and thus justify a refusal to compel arbitration"]; *Davis v. Blue Cross, supra,* 25 Cal.3d at pp. 426-427 [no enforcement of arbitration agreement because party engaged in a course of conduct inconsistent with "good faith"]; see also *Armendariz v. Foundation Health Psychcare Services, Inc., supra,* 24 Cal.4th at p. 124; *Gutierrez v. Autowest, Inc., supra,* 114 Cal.App.4th at p. 93.)

In litigation " 'before any direct communication is made with the opposing party, consent of the opposing attorney is required.' " (*Continental Ins. Co. v. Superior Court* (1995) 32 Cal.App.4th 94, 112.) Salgado's counsel was surprised by Carrows's conduct. Secretly obtaining Salgado's signature on the arbitration agreement without her counsel's knowledge and consent interfered with her counsel's ability to represent Salgado in court.

Where a represented party in litigation gives information or documents to the adverse party, without the knowledge or consent of his or her attorney, courts may prevent the use of the

12

improperly obtained information or documents. " 'While there is an attorney of record, no stipulation as to the conduct or disposal of the action should be entertained by the Court unless the same is signed or consented to by such attorney. . . .' "' (*In re Marriage of Wickander*, *supra*, 187 Cal.App.3d at p. 1367; *Chronometrics, Inc. v. Sysgen, Inc.*, *supra*, 110 Cal.App.3d at p. 608 [affirming exclusion order]; see also *Boulas v. Superior Court* (1986) 188 Cal.App.3d 422, 434; *Holdren v. General Motors Corp.* (D.Kan. 1998) 13 F.Supp.2d 1192, 1197 [protective order]; *Chancellor v. Boeing Co.* (D.Kan. 1988) 678 F.Supp. 250, 254 [protective order].)

Here the trial court achieved the result of protecting Salgado and her counsel by not enforcing the improperly obtained document – the arbitration agreement. Salgado said her manager demanded that she sign the agreement and said her lawsuit had no merit. The court could reasonably infer the arbitration agreement was retaliation for Salgado's lawsuit against Carrows. Precluding contact with a party represented by counsel, without that counsel's consent, is " ' "necessary to the preservation of the attorney-client relationship" ' " and is " 'designed to permit an attorney *to function adequately* in his [or her] proper role.' " (*Triple A Machine Shop, Inc. v. State of California* (1989) 213 Cal.App.3d 131, 139, italics added.) Here the arbitration agreement completely removed Salgado's counsel's ability to "function" in court by *removing the lawsuit* from his control without his knowledge or consent.

"[T]he petition to compel arbitration is not to be granted when there are grounds for rescinding the agreement." (*Engalla v. Permanente Medical Group, Inc.*, *supra*, 15 Cal.4th at p. 973.) Here the court's findings show there are such grounds because:

13

1) the method Carrows used to obtain the agreement and undermining Salgado's attorney's control over Salgado's lawsuit invaded an attorney-client relationship (*In re Marriage of Wickander*, *supra*, 187 Cal.App.3d at p. 1367); and 2) enforcement of the agreement would consequently contravene public policy. (*Ibid.*; see also *St. Agnes Medical Center v. PacificCare of California*, *supra*, 31 Cal.4th at p. 1196; *Armendariz v. Foundation Health Psychcare Services, Inc.*, *supra*, 24 Cal.4th at pp. 124, 126; *Salgado v. Carrows Restaurants, Inc.*, *supra*, 33 Cal.App.5th at p. 362.)

*Forcing Salgado To Sign the Agreement Or Lose Her Job*

Here the trial court also found unconscionability because Salgado "was not given a meaningful choice as to whether to sign the [Arbitration] Agreement." The evidence supports this finding.

In her declaration, Salgado said that when her manager presented her with the arbitration agreement, she asked him "if [she] did not sign *would [she] be fired immediately*." (Italics added.) Her manager responded that "if [she] did not sign *[she] should not bother returning to work*." (Italics added.) Salgado said, "I feared my job was in jeopardy." She said Carrows did not provide her "with the opportunity to read, review or discuss the 'document' with anyone."

From this evidence, the trial court could reasonably infer Carrows gave Salgado an ultimatum. She had to sign or be fired. She consequently had no ability to voluntarily *consent* to an arbitration; the agreement was the product of duress or coercion.

"An arbitration clause is a contractual agreement." (*Salgado v. Carrows Restaurants, Inc.*, *supra*, 33 Cal.App.5th at p. 359.) "[A]n essential component to a contract is *the consent of*

14

*the parties* to the contract." (*Mitri v. Arnel Management Co.* (2007) 157 Cal.App.4th 1164, 1170, italics added.) There is a strong policy favoring arbitration, but there is also a "basic precept that arbitration 'is a matter of consent, not coercion.' " (*Stolt-Nielsen S.A. v. AnimalFeeds International Corp.* (2010) 559 U.S. 662, 681.) If an arbitration agreement is the product of duress, facts showing unconscionability or other grounds supporting the "revocability" or invalidity "of contracts generally," then a court may properly refuse to enforce it. (*Doctor's Associates, Inc. v. Casarotto* (1996) 517 U.S. 681, 687.)

Unconscionability is present where the arbitration agreement is the product of "oppression and surprise." (*Kinney v. United Healthcare Services, Inc.* (1999) 70 Cal.App.4th 1322, 1329.) "The oppression component arises from an inequality of bargaining power of the parties to the contract and an absence of real negotiation or a meaningful choice on the part of the weaker party." (*Ibid*.) This may occur where the employer gives the employee no opportunity to negotiate and "pressured" the employee "to sign the form that same day" without time to review the arbitration policy. (*Id*. at p. 1330; see also *Mercuro v. Superior Court* (2002) 96 Cal.App.4th 167, 174-175 [the court ruled procedural unconscionability may be found where a company uses economic pressure to require employees to sign arbitration agreements or face the prospect of resigning if they do not sign].) The trial court essentially found that is what occurred in this case. Carrows has not shown error.

15

DISPOSITION

The order is affirmed. Costs on appeal are awarded to respondent.

NOT TO BE PUBLISHED.


GILBERT, P. J.

We concur:


YEGAN, J.


TANGEMAN, J.

16

Kevin G. DeNoce, Judge

Superior Court County of Ventura

_____

Spencer C. Skeen and Nikolas T. Djordjevski for Defendants and Appellants.

Law Office of Ruben M. Ruiz, Ruben M. Ruiz for Plaintiff and Respondent.